660 So.2d 555 (1995)
STATE of Louisiana, Plaintiff-Appellee,
v.
Tommy W. SANFORD, Defendant-Appellant.
No. 27268-KA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1995.
*557 Indigent Defender Office by John M. Lawrence, for defendant-appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, Asst. District Attorney, for plaintiff-appellee.
Before MARVIN, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
Tommy Sanford was originally charged by bill of information with aggravated oral sexual battery, La.R.S. 14:43.3, and indicted for aggravated rape, La.R.S. 14:42 A(2). By amended bill of information, Sanford was charged with forcible rape and aggravated crime against nature of a 12-year old boy. La.R.S. 14:42.1, 14:89.1. The jury found him guilty on both counts. Sanford received 27 years imprisonment at hard labor without benefit of probation, parole or suspension of sentence for forcible rape and 10 years at hard labor without benefit for aggravated crime against nature, both sentences to run concurrently and with credit for time served. He now appeals both convictions and the sentence for forcible rape, urging six assignments of error. For the following reasons, we affirm.

Facts
Sanford, a 36-year old, allegedly sexually molested four minor boys, M.W., C.G., J.R., and N.H., ages eight, eight, nine and twelve, respectively, at the time of the incident.[1] All four boys lived in the same trailer park as Sanford, Forest Mobile Home Estates in Shreveport. In late August 1993, the group was washing residents' cars to earn extra money when they encountered Sanford. They finished washing his car and knocked on the door to collect their money. Sanford invited them in and allowed them to watch a pornographic video that was playing. Sanford went into the back bedroom. Shortly thereafter, he called for the boys to come into the bedroom; when they did not, he screamed, "Come back here!" and the boys complied.
Sanford, who was naked, closed and locked the bedroom door behind them, and ordered the boys to take off their clothes. When they refused, Sanford screamed at them; frightened, they again complied and removed their pants. While masturbating, Sanford performed oral sex on each of the boys. According to N.H., Sanford asked them all to perform oral sex on him, but they refused. The other boys, however, testified that they performed oral sex on Sanford; two testified that N.H. did also.
Sanford then retrieved a jar of Vaseline from his nightstand and put some on his penis. Sanford pushed N.H. face-first onto the bed and put his erect penis into the child's rectum. N.H. testified that during this "he told me if I told anybody that he would kill me." R. p. 188. N.H. testified that Sanford "sounded serious" and he believed him. N.H. also testified that he told Sanford to stop, but to no avail. The other boys corroborated N.H.'s story that Sanford had anal sex with him. J.R. also testified that he tried a few times to push Sanford off of N.H., but Sanford shoved him back and continued to rape N.H. At one point, N.H. tried to escape from the bedroom, but Sanford pulled him back inside.
*558 Sanford unsuccessfully attempted to perform anal sex on the other three boys as well. Sanford also tried but failed to get the boys to perform anal sex on him. Finally, Sanford tried to have the boys perform oral and anal sex on each other, but they refused. Sanford ordered them to get dressed and to retrieve some homosexual pornographic books and magazines from the bottom drawer of his dresser. They sat in the living room and Sanford showed the boys the materials, depicting primarily men and some children. Sanford then gave the boys some money and asked them to go purchase cigarettes for him at the Circle K. The store refused to sell the cigarettes to minors; they returned to Sanford's trailer because he threatened to shoot them if they did not. Sanford himself went to buy the cigarettes. The boys obeyed Sanford's command to stay in the trailer. While he was out, M.W. and J.R. who had allegedly been to his trailer just a few days earlier, showed them where Sanford kept three guns, two air rifles or BB guns and one deer rifle; the boys fired the BB guns into the walls of the trailer. When Sanford returned, he gave the boys some chewing tobacco as their "reward." Sanford then took his deer rifle, showed them it was loaded, pointed it at them and said he would shoot them if they told anyone what had happened. Finally, he let the boys leave his trailer.
The boys told no one about the incident until about two weeks later. On September 12, two of the boys' mothers saw Sanford at the pool and remarked that he seemed to be watching the children. M.W. and N.H. related much of the story to their mothers who immediately called the police.
Detective J.B. Walker, assigned to the juvenile and sex crimes division of the Shreveport Police Department responded. He interviewed each of the boys individually at the trailer park. The next day, Sanford was arrested. A search of Sanford's trailer revealed the pornographic video the children had described, a loaded deer rifle and two air rifles, 45 pornographic books and magazines (44 of which were homosexual and four of which depicted minors), chewing tobacco and the jar of Vaseline. The location of these items corresponded exactly with the children's stories.
On September 13, N.H. was examined by Dr. Gerald A. Dzurik, a pediatrician. Dr. Dzurik found no physical evidence to support N.H.'s allegation that he had been anally penetrated. Nevertheless, the testimony of both Dr. Dzurik and another pediatrician, Dr. Margaret Springer, established that several factors, including the two-week delay between the rape and the examination and the use of a lubricant, would likely have eliminated any signs of trauma.
Sanford testified at trial. He admitted the boys came to his trailer in late August, but denied any sexual misconduct; he claimed the boys were lying. He presented one alibi witness who testified to his whereabouts on August 7 and 8. Sanford presented two other longtime friends who testified to his good character and lack of sexual misconduct in the past.
On appeal, Sanford contends (1) there was insufficient evidence to convict him, and that the trial court erred in (2) allowing the state to present J.R.'s testimony about a prior incident at Sanford's trailer without laying a proper foundation; (3) failing to grant his motion for mistrial when a victim's father verbally abused and tried to attack him in front of some jury members; (4) admitting one of the state's exhibits, a photograph of his dresser; (5) imposing an excessive sentence for the forcible rape conviction and (6) failing to record the jury poll results sustaining the two guilty verdicts.

Sufficiency of the Evidence
We note that the proper procedural vehicle to raise this alleged error is a motion for post verdict judgment of acquittal. La. C.Cr.P. art. 821. Sanford failed to present the sufficiency issue to the trial court. However, he has formally assigned it as error and briefed the matter on appeal, and we will therefore consider it. State v. Martin, 26,501 (La.App. 2d Cir. 12/7/94), 647 So.2d 437; State v. Ducre, 596 So.2d 1372 (La.App. 1st Cir.), writ denied, 600 So.2d 637 (1992).
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 *559 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (1992). Credibility determinations are the province of the trier of fact. State v. Trosclair, 443 So.2d 1098 (La.1983), cert. dism. 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984); State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989), writ denied, 567 So.2d 93 (1990).
Sanford was convicted of forcible rape and aggravated crime against nature. Rape is defined as "the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent. Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime." La.R.S. 14:41. Forcible rape is committed where:
the anal or vaginal intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
La.R.S. 14:42.1.
N.H. testified that Sanford locked him in the bedroom, forced him to undress, pushed him onto the bed, and "stuck his penis in me ... in my butt." All three of his friends corroborated that Sanford had anal sex with N.H. N.H. also testified that he did not want Sanford to do that to him and told Sanford to stop. J.R. testified that "[Defendant] had ... [N.H.] in a bind, had him kind of like bent over on the bed, and had him, had his private part, I guess, in his butt and [N.H.] was trying to get, he was trying to get out of it." R. p. 241. J.R., in fact, tried numerous times to push Sanford off of N.H., but was unsuccessful. N.H. testified that he knew J.R. tried to help him by kicking Sanford, but to no avail. During the act, Sanford threatened to shoot and kill N.H. if he told anyone about the incident. N.H. believed that Sanford would harm him and admitted he was scared. Furthermore, the physical evidence recovered (vaseline, pornographic video and homosexual pornography) corroborates the boys' testimony. The jury was entitled to accept the boys' testimony and the supporting evidence. Reviewing the record in the light most favorable to the prosecution, we find there was sufficient evidence for the jury to conclude beyond a reasonable doubt that Sanford was guilty of forcible rape.
Crime against nature is defined (in pertinent part) as "the unnatural carnal copulation by a human being with another of the same sex[.] Emission is not necessary; and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime." La.R.S. 14:89. Aggravated crime against nature is committed under any one or more of the following circumstances:
* * * * * *
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm accompanied by apparent power of execution;
* * * * * *
(6) When the victim is under the age of seventeen years and the offender is at least three years older than the victim.
La.R.S. 14:89.1.[2]
Oral sex is proscribed as crime against nature. State v. Phillips, 365 So.2d 1304, 1308 (La.1978), cert. denied, 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979); State v. Grubbs, 93-2559 (La.App. 4th Cir. 10/25/94), 644 So.2d 1105.
N.H. testified that Sanford performed oral sex on him. The other boys corroborated this. The evidence clearly shows that when this incident occurred, N.H. was 12 years old and Sanford was 36, thus satisfying R.S. 14:89.1(6). The record evidence, viewed in the light most favorable to the prosecution, *560 was sufficient for a jury to find beyond a reasonable doubt the essential elements of aggravated crime against nature.
We find no reversible error.

Laying a foundation
In response to the prosecutor's question as to how he first met Sanford, J.R. began to describe the event which, however, did not involve N.H. or the instant offense. Only after J.R. had related most of the facts surrounding his first meeting with the defendant did Sanford object to improper foundation, arguing that the state had not established the exact time frame for the event. The state argued it was part of the res gestae. The court ruled that the testimony could include all events surrounding the offense charged, but noted that it needed an appropriate foundation for the incidents as it had no time frame within which to consider the state's res gestae assertion. The court directed the prosecutor to simply move on to the incident involving the charged offenses. Questioning resumed, but J.R. again referred to the first incident; Sanford reurged the objection to improper foundation. The court instructed the prosecutor to focus the witness on the second incident, from which the charges arose.
Despite the state's compliance with the ruling, Sanford now contends he was prejudiced by the testimony which failed to specify the time, date and sequence of these events, and thus forced him to develop an alibi defense for the entire month of August, 1993.
J.R. had already testified to much of his first encounter with the defendant by the time Sanford raised his belated objection to foundation. The trial court promptly sustained the objection, and directed the state to move on to J.R.'s second encounter involving all four boys; the state complied. In fact, Sanford concedes the state's compliance in his brief on appeal. In addition, subsequent to Sanford's objections, J.R. testified that his first visit to Sanford's trailer was "about a day or two" prior to the incident involving N.H. thus clarifying the sequence of events and eliminating any confusion the prior testimony may have caused.
Nonetheless, Sanford now alleges that the vagueness of the testimony prejudiced him. However, he neither objected at trial to the alleged prejudicial nature of J.R.'s testimony, nor did he request that the trial court admonish the jury to disregard the testimony. He is therefore precluded from asserting prejudice for the first time on appeal. La.C.Cr.P. art. 841.
Because the trial court sustained and cured Sanford's foundation objection, and Sanford is precluded from raising for the first time on appeal an objection to the alleged prejudicial nature of the testimony, we find no reversible error.

Mistrial
By this assignment, Sanford contends the court erred in denying his motion for a mistrial. During a court recess J.R.'s father, a spectator in the courtroom, verbally confronted and tried to physically attack Sanford at defense counsel's table. The record reflects that some, but not all, of the jurors witnessed this. Sanford requested a mistrial based on the spectator's actions. The court denied the motion because the entire jury was not present for the outburst, those present may not have heard everything that took place and the spectator's identity was never disclosed. Sanford objected to the court's ruling. The court stated it would admonish the jury in general rather than referring specifically to the incident because many jurors had not witnessed it. The court instructed the jury to decide the case based on the evidence alone and to disregard everything else, including "outside pressures." Sanford did not object to this general admonishment.
La.C.Cr.P. art. 775 provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial is a drastic remedy, however, to be invoked only when the defendant suffers such substantial prejudice that *561 he is deprived of any reasonable expectation of a fair trial. State v. Hooker, 623 So.2d 178 (La.App. 2d Cir.1993). The decision whether or not to grant a mistrial lies within the sound discretion of the trial court; such ruling will not be overturned absent a clear abuse of discretion. State v. Stills, 600 So.2d 134 (La.App. 2d Cir.1992).
In State v. Allen, 276 So.2d 868 (La.1973), the Supreme Court upheld the trial court's denial of the defendant's mistrial motion based on some spectators' inappropriate comments during trial. The Court stated, "where, as here, improper audience behavior is purely fortuitous and where the court takes immediate steps to quell it and to admonish the jury and the spectators to assure no prejudice to the accused, a mistrial may not be required if the audience misbehaviour may be reasonably viewed as not having unduly influenced the jury." Allen, supra at 871.
In State v. Wright, 441 So.2d 1301 (La. App. 1st Cir.1983), the court upheld the lower court's denial of a mistrial motion prompted by a spectator's outburst near the close of trial. In affirming, the court noted that the spectator was not identified and was promptly removed from the courtroom, and the jury was admonished to disregard the conduct. Wright, supra at 1306. Likewise, in State v. Johnson, 475 So.2d 394 (La.App. 1st Cir.), writ denied, 478 So.2d 143 (1985), the court affirmed the lower court's denial of a mistrial motion prompted by a spectator's outburst during the state's opening statement. Similarly, the spectator was not identified and was immediately escorted from the courtroom, and the court admonished the jury to disregard the conduct. Johnson, supra at 396.
In the instant case, only some of the jurors witnessed the spectator's outburst and not all were fully aware of his actions. The event, as in Allen, supra, was purely fortuitous, and in fact, none of the jurors knew the spectator's identity. The trial court immediately admonished J.R.'s father to avoid any future outbursts; he created no further disturbance in the proceedings. In addition, the court generally admonished the jury after the incident. Under the circumstances, we find no clear abuse of discretion in the trial court's decision not to grant Sanford's mistrial motion.

Admission of evidence
Sanford contends the trial court committed reversible error in allowing into evidence a photograph which primarily depicts his dresser in the rear bedroom of his trailer.
At trial the state attempted to introduce two photographs, exhibits 6 and 7, both depicting Sanford's dresser. The photos also show a piece of white rope lying atop the dresser. N.H. and the other victims testified that Sanford kept his homosexual pornography inside the bottom drawer of this dresser. Sanford objected at trial on the grounds that the prejudicial effect of the rope substantially outweighed any probative value. La.C.E. art. 403. The trial court admitted exhibit 6 and excluded 7 only because it was duplicative. In admitting the photo, the court stated:
[I]n looking at this rope, it doesn't look like, it is just a cut piece of old rope and it doesn't seem to be prejudicial in nature. And I think the jury is well aware that these pictures were taken a long time after the alleged incident occurred.
Sanford objected to the court's ruling.
The photograph of Sanford's dresser is certainly relevant. La.C.E. art. 401. It corroborates the boys' description of the bedroom in which the crimes occurred. It also corroborates their testimony that Sanford kept homosexual pornographic magazines and books in the bottom drawer of this dresser, material which he showed them on the day the crimes occurred. Detective Walker's testimony confirmed that they found these materials in the dresser exactly as the boys had described.
None of the boys testified that Sanford used the rope to commit the crime. In fact, no witness testified about the rope; it was never mentioned to the jury. As noted by the trial court, the rope depicted in the photo is merely an ordinary piece of old rope. The rope itself suggests no untoward purpose and alone does not implicate any criminal behavior. The jury also knew that the photograph *562 was taken two weeks after the crime occurred.
The trial court has great discretion in assessing the probative value of evidence. Hebert v. Angelle, 600 So.2d 832 (La.App. 3d Cir.), writ denied, 604 So.2d 997 (1992). Under the circumstances, we find no error in the court's decision to allow the photograph into evidence.

Excessiveness of sentence
Sanford contests as excessive only the 27-year hard labor sentence for forcible rape. This sentence was imposed without benefit of probation, parole or suspension of sentence. Sanford timely filed a motion to reconsider the sentence, which was denied.
As Sanford has no prior criminal history, the Felony Sentencing Guidelines recommended a sentencing range between 60 and 90 months (5-7.5 years) for the crime of forcible rape. Nevertheless, while a trial judge must consider the Guidelines, he has complete discretion to reject them and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of conviction; he need only state for the record the considerations taken into account and the factual basis for the sentence imposed. La.C.Cr.P. art. 894.1; State v. Smith, 93-0402 (La. 7/5/94), 639 So.2d 237 (on rehearing). Compliance with this procedure renders only a review for constitutional excessiveness necessary, without regard to whether the trial judge employed or deviated from the Guidelines. State v. Smith, supra.
In the instant case, the trial judge noted that the Guidelines, grid cell 1G, recommended 60-90 months incarceration, but also stated he found numerous aggravating factors, which made the case atypical and required him to depart upward from the Guidelines. Initially the judge noted that this case differed from the "typical" forcible rape case involving two adults of the opposite sex. As aggravating factors, the trial judge considered that (1) Sanford knew or should have known of N.H.'s vulnerability due to his young age; (2) he used his position as a person the boys looked up to in order to facilitate commission of the crime; (3) he threatened actual violence during commission of the offense; (4) the offense resulted in significant emotional injury to N.H. as well as the other boys who have sought counseling because they have trouble sleeping and are unable to relate with adult males; and finally (5) the offense involved multiple victims for which separate sentences were not imposed. The judge stated that he had never before had a case involving as many as five aggravating factors. Only one valid aggravating factor is needed to justify an upward departure. State v. Tate, 25,765 (La. App. 2d Cir. 2/23/94), 632 So.2d 1213.
In mitigation, the court considered letters from Sanford's friends and testimony at trial as to his good character, as well as Sanford's diabetes and his concern for his parents. The trial court expressly declined to impose the maximum 40-year statutory sentence because of the existence of these mitigatory factors, and sentenced him instead to 27 years at hard labor without benefit and with credit for time served. In light of all the evidence, and particularly because he believed that Sanford's showing the boys homosexual pornographic materials indicated "grooming" for future sexual acts, the judge determined the entire sentence should be without benefit.
Because the trial judge properly considered the guidelines and stated for the record the considerations and factual basis for the sentence, we now consider only whether the sentence imposed was constitutionally excessive. State v. Smith, supra.
A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate when the crime and punishment, considered in light of the harm done to society, shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La. 1985); State v. Thompson, 25,583 (La.App. 2d Cir. 1/19/94), 631 So.2d 555. Absent manifest abuse of a trial court's wide discretion to sentence within the statutory limits, we will *563 not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Madison, 535 So.2d 1024 (La.App. 2d Cir. 1988).
La.R.S. 14:42.1 imposes a minimum of 5 and maximum of 40 years imprisonment at hard labor, at least two years to be served without benefit of probation, parole or suspension of sentence, for commission of the crime of forcible rape. Sanford did not receive near the maximum statutory penalty. In light of the circumstances in this case, we consider the sentence to be neither a needless or purposeless infliction of pain and suffering nor an abuse of the trial court's wide discretion. The sentence is not constitutionally excessive and will be upheld.

Jury poll results
Sanford urges that the failure of the transcript to contain the results of the jury poll regarding the votes on each count constitutes reversible error.
After the jury rendered its guilty verdict, Sanford requested that the jury be polled on the result. At this point, the transcript contains a note from the court reporter which reads:
(Whereupon the jury was polled as to the validity of the verdicts rendered against the defendant at bar.) R. p. 430.
Neither the polling method nor the poll results appear in the transcript. However, the court minutes reflect an 11-1 vote on count one and a unanimous vote on count two. Sanford cites numerous cases for the proposition that when the transcript and minutes conflict, the transcript must control. Regardless, we find no conflict between the two; the transcript simply does not contain the poll count.
We note that Sanford did not contemporaneously object to the polling procedure, thus precluding review of this error on appeal. La.C.Cr.P. art. 841; State v. Gardette, 352 So.2d 212 (La.1977); State v. Lamb, 458 So.2d 996 (La.App. 3d Cir.1984). In any event, although neither the minutes nor the transcript reflect the juror-by juror poll, Sanford does not allege that the procedure was improper or that the final count was incorrect. This assignment lacks merit.

Error Patent
We find one error patent. The trial court advised Sanford that he had three years to file for post-conviction relief. The court failed to point out that the three-year period begins to run from the day a conviction becomes final. La.C.Cr.P. art. 930.8 A. This defect, however, is not grounds to reverse the sentence or to remand the case for resentencing. La.C.Cr.P. art. 921; State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992). The trial court shall notify Sanford in writing of the proper prescriptive period within 10 days of the rendition of this opinion and file Sanford's receipt of such notice in the record of these proceedings.
For the reasons expressed, Sanford's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The state filed charges against Sanford, however, only in connection with N.H. Predictably, due to the young age of the boys and the sensitive nature of the crime involved, their accounts diverged as to the precise date and the manner in which the events unfolded. As the eldest and victim named in the charges, N.H.'s version of the facts is set forth herein.
[2] The charge to the jury covered only these two subsections of the statute.