683 So.2d 315 (1996)
STATE of Louisiana, Appellee,
v.
Howard Christopher TIMON, Appellant.
No. 28747-KA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1996.
*319 Daryl Gold, Shreveport, for Appellant.
Richard Ieyoub, Attorney General, Don M. Burkett, District Attorney, Clifford R. Strider, III, Assistant District Attorney, for Appellee.
Before NORRIS, WILLIAMS and STEWART, JJ.
STEWART, Judge.
A DeSoto Parish Grand Jury indicted the defendant, Chris Timon, for the first degree murder of William Stewart. A jury unanimously convicted Chris Timon, the defendant, of the first degree murder of William Stewart. After a separate penalty phase, the jury failed to agree to a sentence. The trial court sentenced the defendant to a mandatory sentence of life imprisonment without the benefit of probation, parole or suspension of sentence. The defendant now appeals his conviction. For these reasons, we affirm the trial court's judgment.

FACTS
In December of 1994, the defendant, Gary Lynn Shaw (Shaw), and Garrett Wilson (Wilson) lived together. Each was experiencing financial difficulties. On December 23, shortly after midnight, the three men went to the Horseshoe Casino in Bossier City with the plan to find an individual who had won a lot of money and to rob him. They searched the three decks before finding two gamblers on the Arkansas deck who were playing blackjack and had many chips. The defendant, Shaw, and Williams stayed in the Horseshoe Casino three to four hours watching the two men gamble while waiting for one of them to leave.
Finally, the victim left the blackjack table to cash out. The three men watched the victim cash in $20,000.00 in chips. When the victim left, escorted by a security guard, the three men followed him off the boat. They walked out separately in order not to arouse suspicion. The casino surveillance cameras taped the defendant, Wilson, and Shaw arriving together, watching the victim gamble, hovering around the victim while he cashed out, and following the victim out of the casino.
*320 The victim left the casino parking lot driving a pick up truck and pulling a trailer loaded with oil field equipment. The defendant, Wilson, and Shaw followed him in Wilson's truck. Eventually, the victim drove south on Interstate 49. On a remote stretch of I-49 in DeSoto Parish, the defendant shot the victim's tires causing at least one to go flat. The victim pulled over to the side of the road, and Wilson drove past him. Wilson made a U-turn in the median and traveled north on the opposite side of the interstate. He stopped the truck about one-half to three-fourth of a mile past the victim's truck.
The defendant and Shaw ran across the median toward the victim while Wilson stayed with the truck. Shaw carried an unloaded shotgun and the defendant carried a loaded .22 caliber rifle. Shaw and the defendant were gone about 10-15 minutes. Upon returning, the defendant told Wilson that the victim struggled with Shaw and attempted to take his gun away. At that point, the defendant shot the victim three to four times and returned to Wilson's truck.
The three men left the scene driving north toward Shreveport, but ran out of gas on Mansfield Road in Stonewall. Wilson called his ex-wife, Jennifer Wilson, from a cellular phone and asked her to bring him some gas. She refused to help him because her child was sleeping. Ms. Wilson testified that during their phone conversation, she heard the defendant in the background. Shaw then called a friend, Margie Lewis, who agreed to help him. She testified that when she picked up Shaw in Stonewall she saw two other men in the truck but could not identify them.
Calvin Earthly, a passing motorist, stopped at the victim's truck when he saw him lying in the road. Mr. Earthly testified that the victim told him that two white guys had shot and robbed him. Mr. Earthly left the scene to find help. Deputy James Cements of the DeSoto Parish Sheriff's Office happened to be a short way down the road issuing a ticket to a 18-wheeler. Deputy Clements traveled to the scene where the victim told him that two white guys shot him. The victim died several hours later at a local hospital.
A DeSoto Parish Grand Jury indicted the defendant and Shaw on a charge of first degree murder. Shaw ultimately pled guilty as charged pursuant to an agreement that the district attorney would not seek the death penalty. The DeSoto Parish Grand Jury indicted Wilson for armed robbery and accessory after the fact. He also pled guilty with the agreement that he would testify truthfully for the state and would receive a maximum sentence of twenty years for armed robbery and five years for accessory after the fact. According to the state's brief, Wilson later received concurrent sentences of fifteen years for the armed robbery and five years for accessory after the fact.
The defendant was tried before a jury that unanimously convicted him of first degree murder but failed to agree upon a sentence. The trial court sentenced the defendant to the mandatory sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence. This appeal follows. In the defendant's brief, he does not contest the sufficiency of the evidence. He asserts that the trial court committed many errors to such an extent that the defendant did not receive a fair trial.

DISCUSSION

Assignments of Error
On appeal, the defendant argues twenty-two assignments of error. Listed below are the defendant's assignments.
1) The trial court erred in granting the state's challenge for cause to prospective juror Helen Norris.
2) The trial court erred in granting the state's challenge for cause to prospective juror Trinidey Clark.
3) The trial court erred in overruling the defendant's challenge for cause of prospective juror Corley Dysart.
4) The trial court erred in overruling the defendant's challenge for cause of prospective juror Marshall Wood.
5) The trial court erred in overruling the defendant's original motion for change of venue and the re-urgence of that motion.
*321 6) The trial court erred in overruling the defendant's challenge for cause of prospective juror Charles Rogers.
7) The trial court erred in overruling the defendant's challenge for cause of prospective juror Ernel Jones.
8) The trial court erred in overruling the defendant's motion for a mistrial.
9) The trial court erred in overruling the defendant's motion to quash the jury venire.
10) The trial court erred in overruling the defendant's motion for a mistrial.
11) The trial court erred in overruling the defendant's motion for a mistrial.
12) The trial court erred in overruling the defendant's motion for change of venue and motion to quash the jury venire.
13) The trial court erred in restricting defense counsel's questioning of state witness Tammy Williams concerning matters central to her credibility.
14) The trial court erred in granting the state's motion in limine concerning the testimony of state witness Tammy Williams.
15) The trial court erred in allowing the hearsay testimony of Calvin Ray Earthly concerning his conversation with the victim.
16) The trial court erred in allowing the hearsay testimony of Detective Tony Morris concerning what Tammy Williams told him. (abandoned)
17) The trial court erred in overruling the defendant's hearsay objection. (abandoned)
18) The trial court erred in refusing to order the district attorney to turn over to the defense the report of Detective Morris after Detective Morris used the report to refresh his memory concerning his interview with Tammy Williams. (abandoned)
19) The trial court erred in refusing to allow the defense to introduce defense exhibit 7A which is a copy of the Gary Lynn Shaw's plea agreement.
20) The trial court erred in overruling the defendant's motion for a mistrial made during the state's closing argument.
21) The trial court erred in overruling the defendant's motion for a mistrial during the state's rebuttal argument.
22) The trial court erred in refusing to grant the requested jury instructions and in overruling certain defense objections to the jury instructions.

Assignment of Error No. 1:
The defendant argues that the trial court committed error in granting the state's challenge for cause to prospective juror Helen Norris. The state challenged Ms. Norris under La.C.Cr.P. art. 798(2) because of her views on the death penalty. The defendant asserts that this prospective juror never made it clear that she would automatically vote against the imposition of the death penalty without regard to the evidence that the state may develop.
Article 798(2) provides that the state may challenge a prospective juror in a capital case:
who has conscientious scruples against the infliction of capital punishment and makes it known:
(a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him;
(b) that his attitude toward the death penalty would prevent him from making an impartial decision as a juror in accordance with his instructions and his oath; or
(c) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt; ...
We vest a trial court with broad discretion in ruling on a challenge for cause, and will not disturb its ruling on appeal absent a showing of abuse of that discretion. State v. Lee, 93-2810 (La.5/23/94), 637 So.2d 102; State v. Plater, 26,252 (La.App.2d Cir. 9/21/94), 643 So.2d 313, writ denied, 94-2608 (La.2/3/95), 649 So.2d 402.
Contrary to the defendant's assertions, Ms. Norris stated from the beginning that she did not believe the death penalty was appropriate under any circumstances. *322 In response to defense counsel's questioning, Ms. Norris did state once that the death penalty may be appropriate sometimes but she also stated that she could never impose it. Throughout her questioning, Ms. Norris never wavered from this position. Therefore, we conclude that the trial court properly excused Ms. Norris under La.C.Cr.P. art. 798 based upon her convictions against the death penalty. See State v. Wiley, 513 So.2d 849 (La.App. 2d Cir.1987), writ denied, 522 So.2d 1092 (La.1988).
This assignment of error is without merit.

Assignments of Error Numbers 3, 4, 6, & 7:
In these assignments of error, the defendant asserts that the trial court erred in denying his challenges for cause against prospective jurors Corley Dysart, Marshall Wood, Charles Rogers and Ernel Jones. The defendant properly objected to each denial of his challenges for cause and exhausted all of his peremptory challenges.

Corley A. Dysart
The defendant challenged Ms. Dysart arguing that she was "too close to the case." He asserts that she had a great deal of knowledge about the case as it happened very close to her home.
Ms. Dysart testified that she had information about the instant crime from the newspapers, The Shreveport Times and The Mansfield Enterprise, as well as from television news. She was aware that the two other co-defendants had pled guilty and that one received life imprisonment without parole and the other "just received life." Ms. Dysart also testified that her daughter had a friend who knew the defendant and that her daughter may have traveled to the jail to visit with the defendant. Ms. Dysart did not know whether her daughter or her friend was allowed to see the defendant. Despite this connection and her knowledge of the case, Ms. Dysart testified that she could be fair and impartial in deciding the case, that she had no prejudgments, and that she had not formed an opinion about the defendant's guilt or innocence.

Marshall Wood
The defendant argues that Mr. Wood had extensive knowledge about the instant crime. Mr. Wood knew many details surrounding the crime including: how the defendant and the co-defendant's followed the victim from the casino, how one of the victim's tires had been shot out on the interstate, how the defendants looped around, and parked on the other side of the interstate. Mr. Wood also knew that the two other participants in the crime had pled guilty to lesser offenses. Mr. Wood testified that his knowledge of the crime came from newspapers and television news, however, he did not know if this information was true. He stated that he would give the defendant the presumption of innocence and that he had not formed an opinion regarding the defendant's guilt or innocence. The trial court denied the defendant's challenge for cause as to Mr. Wood.

Ernel Jones
The defendant also challenges Mr. Jones because he had "an extraordinary amount of knowledge" about this case and was particularly interested in this case.
Mr. Jones testified that he had read and heard about the crime in the newspaper and television news. He stated that he knew that three young men had followed the victim out of a casino to Interstate 49, possibly shot out his tires, and robbed and killed him. Mr. Jones also knew that a passing motorist stopped to help the victim and that, before the victim died, he told the motorist that the perpetrators were white men. Mr. Jones was aware that one of the co-defendant's had pled guilty to first degree murder and that the other was not charged with murder because he had remained in the car. Mr. Jones admitted that he did not know what role the defendant played in the crime. Despite his previous knowledge of the crime, Mr. Jones testified that he would be fair and impartial and that he would not let anything he had heard about the crime influence him.
The trial court denied the defendant's challenge for cause stating Mr. Jones was highly intelligent and that this would explain his ability to recall the details he had read about the crime.
La.C.Cr.P. art. 797 provides in pertinent part:

*323 The state or the defendant may challenge a juror for cause on the ground that:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and evidence; ...
The trial court's refusal to excuse a juror for cause is not an abuse of discretion, aside the fact that a juror has voiced an opinion seemingly prejudicial to the defense, where subsequent inquiry or instruction proves the juror's willingness or ability to decide the case impartially and according to the trial court's instructions. State v. Plater, supra. If a prospective juror is able, after examination by counsel, to declare to the court's reasonable satisfaction that he can render an impartial verdict according to the law and the evidence, it is the trial judge's duty to deny the challenge for cause. Id.
Furthermore, a juror need not be totally ignorant of the facts and issues involved. State v. Harper, 430 So.2d 627 (La. 1983), and cases cited therein. If a juror who has heard or read about the case can sufficiently lay aside his impression or opinion of the defendant's guilt or innocence and render a verdict based on the evidence presented in court he is competent to serve as a juror. See State v. Harper, supra.
In State v. Goodson, 412 So.2d 1077 (La. 1982), the defendant was accused of being what the newspaper reported as the "Highland Rapist." He was also accused of a rape in Bossier City. Before his trial on the Bossier City case, the defendant motioned for a change of venue that the trial court denied. The supreme court granted a supervisory writ, vacated this denial, and instructed the trial court to defer decision on this motion until after voir dire. The court also issued guidelines to the trial court for conducting the voir dire examination and making rulings on challenges for cause. The court stated as follows:
Both the degree of exposure and the prospective juror's testimony as to state of mind are relevant to the determination of acceptability. A prospective juror testifying to an inability to overcome preconceptions shall be subject to challenge for cause no matter how slight the exposure. If the prospective juror remembers information that will be developed in the course of the trial, or that may be inadmissable but does not create a substantial risk of impairing judgment, that person's acceptability shall turn on the credibility of testimony as to impartiality. If the formation of an opinion is admitted, the prospective juror shall be subject to challenge for cause unless the examination shows unequivocally the capacity to be impartial. A prospective juror who has been exposed to and remembers reports of highly significant information, such as the existence or contents of a confession, or other matters that may be inadmissable in evidence, or substantially inflammatory material, shall be subject to challenge for cause without regard to the prospective juror's testimony as to state of mind.
State v. Goodson, supra at 1081; see also State v. Goodson, 437 So.2d 1174 (La.App. 2d Cir.1983), on remand.
Applying these guidelines to the three prospective jurors listed above the trial court did not err in denying these challenges for cause. Ms. Dysart stated that she had not formed an opinion about this case. The information Ms. Dysart learned of was not inflammatory. Rather, it was merely factual. She understood that any evidence used to convict the defendant must come from the court and that she could put aside all other information.
Mr. Wood's knowledge was also merely factual and was not inflammatory. He testified that he had not formed an opinion and that he would decide the case based on what was presented in the courtroom. Mr. Jones testified that what he already knew about the case would not influence him and that he could apply the presumption of innocence. The information that he had about the crime was factual not inflammatory.
The trial court is given discretion in ruling on a challenge for cause and its decision should not be disturbed absent a showing of *324 the abuse of that discretion. State v. Plater, supra. The ability of the trial court to see and hear the prospective jurors' answers are an important part of determining their credibility and their impartiality. The trial court's evaluation of these prospective jurors' credibility was not in error. Although these jurors remembered some details about the crime, this prior knowledge did not create a substantial risk of impaired judgment.

Charles Rogers
The defendant challenged Mr. Rogers because of his admitted hearing problem and his alleged inability to understand legal notions. He also argued that Mr. Rogers should have been excused because he took a particular interest in the case when he realized that he was a possible juror.
No person shall be deemed incompetent to serve as a juror solely because of the loss of hearing. La.C.Cr.P. art. 401(A)(4). A prospective juror may be challenged for cause, however, when there is a showing of a loss of hearing which satisfies the court that the juror is incapable of performing his duties. La.C.Cr.P. art. 401(B)(1). Therefore, the trial court is vested with great discretion in determining whether a juror suffering from a physical infirmity is competent to serve as a juror. State v. Mills, 505 So.2d 933 (La.App. 2d Cir.1987). A decision by a trial court that a juror is not so impaired to make him incompetent to serve as a juror should not be disturbed absent abuse of discretion. State v. Mills, supra and State v. Dugar, 93-718 (La.App. 3d Cir. 10/5/94), 643 So.2d 870.
Mr. Rogers admitted that he had some trouble hearing when people mumbled or did not speak plain. However, he testified that he could hear the attorneys when they spoke into the microphone from the witness stand. He also stated that he would not be embarrassed to raise his hand during the trial if he could not hear.
The trial court did not abuse its discretion in determining that Mr. Rogers was not so impaired to make him incompetent to serve as a juror. See State v. Dugar, supra.
Regarding Mr. Rogers' alleged inability to understand legal notions, in the beginning of the voir dire he was confused about the state's burden of proof. Mr. Rogers stated that he would want to hear from both sides and would be concerned if the defendant did not put on any witnesses. However, upon further explanation of the burden of proof, Mr. Rogers stated that he understood that the defendant may not have to bring any witnesses if the state had failed to carry its burden. Despite Mr. Rogers' initial confusion, he stated that he understood and could apply the state's burden of proof and the presumption of innocence afforded to the defendant. The state successfully rehabilitated him. See State v. Plater, supra.
Finally, the defendant argues that the trial court should have excused Mr. Rogers because he testified that when he realized that they were summoning him for this trial, he went back and read the newspaper article concerning this crime in more detail. However, although he testified he read the article in detail, Mr. Rogers was unable to recall many details. Mr. Rogers could only recall that some people had followed the victim from a casino, robbed and killed him, and that they arrested three people. In fact, he recalled fewer details about the crime than the previously mentioned jurors. Furthermore, Mr. Rogers stated that he knew that he could not consider any of the information he had read against the defendant. The trial court did not abuse its discretion in denying this challenge for cause against Mr. Rogers.
These assignments of error are without merit.

Assignments of Error Numbers 5 & 12:
The defendant asserts that the trial court erred in denying his motion for a change of venue. The defendant filed this motion on August 3, 1995, alleging that many articles in local newspapers concerning this case prevented the defendant from receiving a fair trial. He attached to this motion a newspaper article published in The Enterprise on July 27, 1995, one month before the trial was scheduled to begin. The trial court deferred his ruling on this motion until voir dire.
*325 The defendant reargued this motion on August 24, 1995, during the jury selection. In support of his motion, he submitted an additional article published in The Enterprise that morning concerning the jury selection process. The defendant argued that the picture accompanying the article was prejudicial in that it showed the defendant with a towel over his handcuffed hands. The trial court ruled that voir dire would continue. The trial court asked the prospective jurors if any had read the morning newspaper and only one responded positively. The record does not reveal that this juror was ever questioned again. According to the court minutes, he was excused. One other juror was excused later when she stated that she had read the newspaper that morning.
At the completion of the jury selection, the defendant reargued his motion for a change of venue. He argued that the record would reveal that many jurors possessed an extensive knowledge about the case. The state argued that all jurors selected and all those not excused for cause stated that they could put their prior knowledge out of their minds. The trial court denied this motion.
A change of venue shall be granted when the applicant proves that because of prejudice existing in the public mind or because of undue influence, or for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending. La.C.Cr.P. art. 622. The defendant is required to show more than public knowledge of the facts surrounding the offense. State v. Griffin, 618 So.2d 680 (La. App. 2d Cir.), writ denied, 625 So.2d 1063 (La.1993), and cases cited therein. The defendant must prove that the existence of such prejudice in the community's collective mind makes a fair trial impossible. Id. The trial court is given much discretion in granting or denying a change of venue. State v. Plater, supra.
Factors to consider in determining whether a change of venue is appropriate include: 1) the nature of the pre-trial publicity and the particular degree to which it has circulated in the community; 2) the connection of government officials with the release of the publicity; 3) the length of time between the dissemination of the publicity and the trial; 4) the severity and notoriety of the offense; 5) the area from which the jury is to be drawn; 6) other events occurring in the community which affect or reflect the attitude of the community or individual jurors toward the defendant; and 7) any factors likely to affect the candor or veracity of the prospective jurors on voir dire. State v. Bell, 315 So.2d 307 (La.1975); State v. Moseley, 587 So.2d 46 (La.App. 2d Cir.), writ denied, 589 So.2d 1066 (La.1991). The court may also consider the level of publicity in the area to which the venue could be changed; the care exercised and the ease encountered in selecting a jury; the prospective jurors' familiarity with, and effects of, the publicity; the peremptory challenges and challenges for cause exercised by the defendant in jury selection. State v. Moseley, supra and cases cited therein.
In the instant case, a total of 96 prospective jurors were questioned; 38 were challenged for cause by the state because of their views on the death penalty and one was challenged for cause by the defendant because of his view on the death penalty. The defendant was granted six challenges for cause for reasons other than the death penalty and was denied nine other challenges for cause. Four prospective jury members were excused for cause and/or hardship by motion of the state. The state exercised six peremptory challenges and the defendant exercised 12. The remaining seven jurors were excused by the court for various reasons. No peremptory challenges were made during the selection of the alternate juror.
Most of the jurors testified that they had heard or read about the incident. Most related the factual account of the incident as portrayed in the news accounts and a few knew of the role this defendant allegedly played in the crime. However, only two prospective jurors stated that they had already formed an opinion concerning the guilt of the defendant. These jurors were excused for cause at the request of the defendant. The trial court also granted the defendant two other challenges for cause against jurors who had too much knowledge about the case.
*326 The defendant submitted only two articles from the local newspaper in support of his motion. One of the articles was published during the week of jury selection and the venire members were instructed not to read the paper. Two prospective jurors were excused when they admitted that they had read the article in question. The second article was published approximately one month before trial. The articles submitted were factual accounts of the offense and were not inflammatory. There is no indication in the articles that the information was released by government officials. See and compare State v. Moseley, supra at 53.
This offense was well-known in the community because of the nature and seriousness of the crime and the connection to the casinos. This is evidenced by the number of jurors questioned who were aware of the crime and were familiar with the facts of the offense. However, there is no evidence of a community-wide outrage or prejudice against the defendant. As noted by the state in its brief, neither the victim, the defendant, nor the co-defendants were connected to DeSoto Parish.
The defendant has not put forth any evidence of other events in the community that would affect the community's view of the defendant or affect the jury venire's candor and veracity. Nor has he put forth any evidence of the area from which the jury was to be drawn or the nature and level of publicity from an alternate venue.
The examination of the entire jury voir dire does not reveal a prevalent community-wide prejudice. Although most of the jurors were familiar with the facts of the case, only one juror openly stated that based on his prior knowledge about the case he felt the defendant was guilty. All the jurors chosen stated that they could put aside their previous knowledge about the case and that the pre-trial publicity would not affect their ability to listen to the evidence and follow the judge's instructions in a fair and impartial manner. Admittedly, the fact that a jury was successfully selected does not necessarily mean that the defendant has no grounds for a change of venue. See La.C.Cr.P. art. 622, Official Revision Comment (b); State v. Plater, supra. However, the defendant has failed to show more than a general knowledge of the facts surrounding the offense or that he could not receive a fair and impartial trial in DeSoto Parish. As stated above, the trial court is granted great discretion in granting or denying a change of venue. The trial court did not err in ruling that the defendant failed to show sufficient prejudice in this parish to warrant a change of venue.
This assignment of error is without merit.

Assignments of Error Numbers 8 & 9:
In these assignments of error, the defendant asserts that the trial court erred in denying his motion for a mistrial, or in the alternative, to dismiss the present panel of jurors, based on a prospective juror's statement. Prospective juror Gardine Bolden, when asked by the court if any prospective juror or any close friends or relatives had been a victim of a crime, responded:
I have several. I have an uncle that was sentenced to life imprisonment for murder who's out now. Uh ... I have a brother that was in an incident about two Saturdays ago. He was shot and wounded. And he's in the hospital for that now, so I don't know how the outcome of that would....
After several other jurors were questioned, the defendant, outside the presence of the jury, made a motion for a mistrial or, in the alternative, for this panel to be dismissed. The defendant argued that Ms. Bolden's statement regarding her uncle who had been convicted of murder but had been released tainted this jury panel and caused prejudice. The defendant asserted that the possibility of release from prison after the imposition of a life sentence is not a proper consideration for a jury in a capital case. After some discussion, the defendant withdrew his motion for a mistrial and only urged that the present panel of jurors be dismissed.
Ms. Bolden was questioned outside the presence of the other jurors to clarify her statement. Ms. Bolden stated that her uncle had been convicted of shooting a man over 20 years ago and she did not know why he was released from prison. Ms. Bolden was subsequently *327 excused by agreement of counsel for other reasons.
First, the defendant withdrew his motion for a mistrial thus, this motion is not properly before this court. An irregularity or error cannot be complained of on appeal unless it was objected to at trial. La.C.Cr.P. art. 841. However, this court will discuss the merits of the defendant's motion for a mistrial.
The conditions under which a person sentenced to life imprisonment without the benefit of parole, probation, or suspension of sentence can be released in the future are not a proper consideration for a capital sentencing jury, and shall not be discussed in the jury's presence.[1]State v. Lindsey, 404 So.2d 466 (La.1981), cert. denied, 464 U.S. 908, 104 S.Ct. 261, 78 L.Ed.2d 246 (1983). The prohibition against discussion of the possibility of an offender's future release is not limited to the sentencing phase of a capital case, but extends to voir dire. State v. Byrne, 483 So.2d 564 (La.1986), cert. denied, 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986). Although this prohibition applies to every phase of a capital case, not every reference to the possibility of pardon or commutation of sentence made during a trial is reversible error. State v. Byrne, supra.
The statement made by prospective juror Bolden was not a direct statement regarding the conditions under which a person sentenced to life imprisonment can be released in the future. Ms. Bolden did not state that her uncle had been convicted of first degree murder, she only stated that he was convicted of murder. The release of Ms. Bolden's uncle could have been for many reasons; such as, his conviction was reversed on appeal, he was convicted of a lesser degree of homicide, he received a pardon or commutation of sentence, or that his sentence was imposed with the possibility of parole. Furthermore, the statement was not solicited by the court or the prosecutor.
A mistrial is a drastic remedy to be invoked only when the defendant suffers such substantial prejudice that he is deprived of any reasonable expectation of a fair trial. State v. Sanford, 27,268 (La.App.2d Cir. 8/23/95), 660 So.2d 555, writ denied, 95-2570 (La.2/9/96), 667 So.2d 527. Thus, considering the above listed factors, we conclude that Ms. Bolden's comment was harmless and did not create a substantial prejudice such that it deprived the defendant of a reasonable expectation of a fair trial.
We also conclude that the trial court did not err in refusing to excuse the jury panel who heard this statement. As discussed above, the statement was unclear and was not a direct reference to the possibility of a pardon for one sentenced to life without parole. There is no evidence that this statement affected this jury panel. There was no further mention of the possibility of a pardon throughout the remainder of the trial.
These assignments of error are without merit.

Assignments of Error Numbers 10 & 11:
In these assignments of error, the defendant asserts that the trial court erred in refusing to grant a mistrial due to jury sequestration violations. The defendant complains of the procedure used by the deputy sheriff, Heigh Speight, regarding the transportation of the jurors during jury selection.
Upon acceptance by the state and the defense, the jurors were sworn according to La.C.Cr.P. art. 788. After each individual juror was selected, Deputy Speight allowed the juror to drive his or her personal vehicle to the motel where the jurors were staying. This was to allow the juror's relatives to pick up the vehicle or to allow the juror to store the vehicle at the motel. Deputy Speight testified that although the jurors drove their vehicles to the motel, they never left his sight, except one juror who was out of his sight for a short period. The sworn jurors were individually questioned and each testified that they had driven their cars to the hotel, either following the sheriff or the sheriff following them, after they had been *328 sworn. Each testified that they had no outside communication concerning the case.
The trial court denied the defendant's motion finding that there was no outside communication by any of the jurors. The defendant filed a writ in this court seeking review of the trial court's ruling. This court denied the writ and stated:
Even assuming arguendo the existence of a technical violation of sequestration, the record presently before this court shows affirmatively that no prejudice to the accused could have resulted from the procedures complained of in the application. On the showing made, the writ is denied. The applicant will have adequate review of his complaints on appeal in the event of his conviction. State v. Timon, 28,156-KW (August 29, 1995).
A jury is sequestered by being kept together in the charge of an officer of the court to be secluded from outside communication. In capital cases, each juror is sequestered after he is sworn. La.C.Cr.P. art. 791.
The purpose of the sequestration is to insulate the jurors from outside influence or the possibility thereof, even unconscious; and, in capital cases especially, the sequestration is strictly enforced so that, upon a separation of a juror after he is sworn, a presumption of misconduct arises and reversible error will be presumed. State v. Parker, 372 So.2d 1037 (La.1979), and authorities cited therein, cert. denied, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983). This jurisprudential rule is, however, limited by those cases holding that where circumstances are such as to reasonably overcome the presumption of prejudice and where it affirmatively appears that no prejudice to the accused could have resulted, the presumption may be rebutted, so that the mere separation of a juror briefly may be held to be insufficient ground to set aside a verdict. State v. Parker, supra, citing State v. Quincy, 363 So.2d 647 (La.1978) and State v. Sheppard, 350 So.2d 615 (La.1977).
The record affirmatively shows that no juror received outside influence or communication during their brief separation from the other jurors. The motel was only about one mile from the courthouse. Deputy Speight testified that the jurors were constantly in his sight even though they were in a separate vehicle, except for one brief time which he explained as a misunderstanding by the juror of the route to be taken. Furthermore, each juror individually testified that they had not had any improper, outside communication.
As stated above, a mistrial is a drastic remedy which should be granted only when such substantial prejudice is shown so as to prevent the reasonable expectation of a fair trial. State v. Sanford, supra. There was no substantial prejudice shown and, the state proved affirmatively that there was no outside communication.
These assignments of error are without merit.

Assignments of Error Numbers 13 & 14:
Tammy Williams was a friend of the defendant. The state called her to testify that the defendant had told her that he had killed a man. Before her testimony, the state filed a motion in limine to limit the defendant from questioning her about a prior arrest for simple possession of marijuana and any prior drug use. The trial court ruled that the defendant could not ask about her prior arrest and that questions about drug use would be limited to the time she heard the statement and the time she gave the statement to the police.
After a lengthy discussion, the state agreed to withdraw its motion in limine concerning Ms. Williams' prior drug use and the defendant agreed to withdraw his objection. Defense counsel questioned Ms. Williams extensively about her drug use and admitted addiction, besides her living arrangements and lifestyle. Thus, there was no prejudice in the trial court's original ruling restricting questioning on this topic. On appeal, the defendant does not object to the court's ruling concerning the limitation of questioning about her prior arrest.
In brief, the defendant argues that the information concerning Ms. Williams' drug use should have been disclosed prior to trial. However, this argument was not presented at trial. A new basis for an objection cannot *329 be raised for the first time on appeal. La. C.Cr.P. art. 841; State v. Cressy, 440 So.2d 141 (La.1983); State v. Smith, 26,661 (La. App.2d Cir. 3/1/95), 651 So.2d 890, writ denied, 95-0918 (La.9/15/95), 660 So.2d 458.
These assignments of error are without merit.

Assignment of Error Number 15:
In this assignment of error, the defendant asserts that the trial court erred in ruling that the victim's statement to Mr. Earthly ("Two white men shot and robbed me.") was a dying declaration. The defendant argues that there was no evidence that the victim was aware of his impending death.
A statement made by a declarant while believing that his death is imminent, concerning the cause or circumstances of what he believed to be his impending death is not excluded under the hearsay rule if the declarant is unavailable. La.C.E. art. 804(B)(2). A statement is admissible as a dying declaration if made when the declarant is conscious of his condition and aware of his approaching demise. State v. Verrett, 419 So.2d 455 (La.1982). However, the victim need not express this belief in direct terms. The necessary state of mind may be inferred from the facts and circumstances surrounding the making of the declaration. State v. Verrett, supra; citing State v. Moore, 165 La. 163, 115 So. 445 (1928); and State v. Jones, 47 La.Ann. 1524, 18 So. 515 (1895). The more serious the injury and impairment of the declarant's physical condition, the more probable is his belief that the end is near. State v. Verrett, supra; citing G. Pugh, Louisiana Evidence Law, at p. 466 (1974). In Verrett, supra, the court concluded that a statement should not be excluded simply because no words were uttered by the declarant indicating an awareness of his impending demise before the statement was made.
At the time the statement in question was made, the victim had been shot four times and was lying on the side of the interstate at 4:00 in the morning. He was severely injured and was bleeding internally as well as externally. In fact, when Deputy Clements arrived at the scene a short time later, the victim told him that he had a heart condition and that he was going to die. Therefore, considering the facts, circumstances, and the seriousness of the injuries, we conclude the victim was aware of his impending death despite the fact that he did not utter any words to that effect prior to making the statement. However, if error, it is harmless error. After Mr. Earthly went to get help for the victim, the victim told the Deputy Sheriff that he was going to die, and the same information he had given to Earthly, that he was robbed and shot by two white men. If the statement to Earthly does not qualify as a dying declaration, the statement shortly thereafter to the Deputy Sheriff does. Thus, this statement should be considered a dying declaration and an exception to the hearsay rules. The evidence was cumulative and any error would be harmless.
This assignment of error is without merit.

Assignment of Error Number 19:
The defendant introduced a copy of Gary Shaw's plea of guilty and waiver of rights. He also attempted to introduce a "plea agreement" between the state and Shaw (proffered as defendant exhibit 7A). The state objected arguing that since Shaw was not called as a witness, this agreement was irrelevant. The defendant argued that this agreement was relevant because it stated that Shaw agreed to testify truthfully when called as a witness by the state but the state failed to call him as a witness. The trial court ruled that since the plea agreement was not used to impeach or rebut a witness it was irrelevant and inadmissable.
Any evidence having the tendency to make the existence of any fact that is the consequence to the determination of the action more probable or less probable than it would be without the evidence is relevant. La.C.E. art. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or waste of time. La.C.E. art. 403. A trial court's decision on the relevancy of evidence is given great weight and should not be overturned on appeal absent a finding *330 of a clear abuse of discretion. State v. Mosby, 595 So.2d 1135 (La.1992).
The trial court did not abuse its discretion in ruling that this plea agreement was irrelevant. The plea agreement was not offered to rebut or impeach any testimony. The jury was aware that Shaw had pled guilty to first degree murder and that he allegedly was present when the defendant shot the victim. The defendant argues that because Shaw was an eyewitness and was not called by the state, his plea agreement was especially relevant. However, the defendant did argue in closing argument the fact that the only eyewitness to the shooting was not called as a witness. The fact that Shaw agreed to testify truthfully if called by the state is irrelevant to the central issue of the trial.
In addition, the defendant was not precluded from calling Shaw as a witness. It is interesting to note that the defendant admitted this in his brief and asserts that he chose not to call Shaw because "he is such a loose cannon and has told so many versions of what happened." This is probably the same reason the state chose not to call him as a witness. Furthermore, Shaw's testimony was not necessary to the state's case given Wilson's confession and testimony.
This assignment is without merit.

Assignment of Error Number 20:
During closing arguments, the prosecutor stated:
Now, there was an allegation made in opening statement. There was an argument made in an offer of what Mr. Gold would prove, what Timon's case would be, that he came separately and left separately. I would suggest to you that there's been no evidence of that.
At this time, the defendant motioned for a mistrial alleging that the prosecutor made indirect reference to the defendant's failure to testify. The state argued that it was merely a comment on the strength of the evidence presented. The court denied the motion for a mistrial.
Although La.C.Cr.P. art. 770(3) seems to mandate a mistrial for either a direct or an indirect reference to the defendant's failure to testify, our courts have repeatedly held the indirect reference to a different standard for mistrial. State v. Lowe, 485 So.2d 99 (La.App. 2d Cir.1986), writ denied, 488 So.2d 199 (La.1986). An indirect reference to the defendant's failure to testify will merit a mistrial only when the intent is to draw the jury's attention to a defendant not taking the stand. State v. Jackson, 454 So.2d 116 (La.1984); State v. Shepherd, 566 So.2d 1127 (La.App. 2d Cir. 1990). A comment that the state's evidence is uncontradicted is not a prohibited comment on a defendant's failure to testify when there are witnesses, other than the defendant, who could have rebutted the state's evidence but did not. State v. Bourque, 622 So.2d 198 (La.1993), citing State v. Jackson, supra and State v. Johnson, 541 So.2d 818 (La.1989).
The prosecutor's comment in this case is a comment on the strength of the state's evidence rather than a comment on the defendant's failure to testify. After the motion was denied, the prosecutor went on to highlight the evidence that proved that the three co-defendants arrived and left the casino together. Furthermore, there were witnesses other than the defendant who could have testified that the defendant left the casino separately. However, the defendant chose not to call Shaw, and Wilson testified to the contrary.
In his brief, the defendant also argues that the prosecutor improperly commented on the defendant's opening statement. This argument was not presented at trial. A new basis for an objection cannot be raised for the first time on appeal. La. C.Cr.P. art. 841; State v. Cressy, supra; State v. Smith, supra. Furthermore, as authority for this position, the defendant cites State v. Lowe, supra. In this case the court found that although a comment on opening statements is improper under La.C.Cr.P. art. 774, it does not mandate a reversal if there is no showing that the remark influenced the jury and contributed to its verdict. State v. Lowe, supra at 107. Likewise in the present case, the defendant has failed to show how the prosecutor's brief mention of defense *331 counsel's opening statement influenced the jury or contributed to its verdict.
This assignment of error is without merit.

Assignment of Error Number 21:
In the defendant's closing arguments, one of his themes was "Where's Gary Lynn Shaw?". In the state's rebuttal argument, the prosecutor responded to the defendant's argument by stating:
Where's Gary Lynn Shaw? Who introduced his plea agreement? Don't ask me. Who introduced his plea agreement?
The defendant moved for a mistrial arguing that this was an improper argument. The trial court denied this motion.
Without citing any law, the defendant argues on appeal that the prosecution was improper and totally outside the bounds of fairness. The prosecution's rebuttal argument was not improper. It was merely a response to the defendant's argument which is within the proper scope of rebuttal argument. La.C.Cr.P. art. 774.
This assignment of error is without merit.

Assignment of Error Number 22:
The defendant requested the following two special jury instructions:
1) The testimony of an alleged accomplice must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses. You should keep in mind that such testimony is always to be received with caution and weighed with great care.
2) The testimony of someone who is shown to have used addictive drugs during the period of time about which the witness testified must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses.
The trial court refused to include these two special instructions because they were included in a more general way in the instructions to be given to the jury.
The trial court instructed the jury that they alone shall determine the weight and credibility of the evidence. The trial court instructed the jury that in considering the credibility of a witness they may consider any reason the witness may have to testify in favor of or against the state or the defendant; that the witness was previously convicted of a crime; that the witness will benefit in some way by the defendant's conviction or acquittal; that the witness is prejudice; that the witness has any other reason or motive for not telling the truth; or that the witness was under the influence of a mind altering substance.
A requested special jury charge need not be given if it is included in the general charge or in another special jury charge. La.C.Cr.P. art. 807. The trial court did not err in refusing to give the defendant's requested jury instructions because the concepts were included in his general charge. If the court were to give the requested instructions they would have been repetitive.
This assignment of error is without merit.

Assignments of Error Numbers 2, 16, 17 & 18:
These assignments of error were not briefed by the defendant. An argument not briefed or argued is deemed abandoned. URCA Rule 2-12.4; State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990). Therefore, these assignments of error are deemed abandoned.

DECREE
For these reasons, the defendant's conviction of first degree murder is upheld.
AFFIRMED.
NOTES
[1] This trial was held prior to the adoption of the constitutional amendment which requires a trial court to instruct the jury of the possibility of a pardon by the governor in a capital case. La. Const. art. 1 § 16 (ratified November 18, 1995). See La.C.Cr.P. art. 905.2(B).