794 So.2d 107 (2001)
STATE of Louisiana, Appellee,
v.
Jerry JONES, Appellant.
No. 34,863-KA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 2001.
*111 Louisiana Appellate Project by Amy C. Ellender, Counsel for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Allen Harvey, D. Brian Harkins, Jr., Assistant District Attorneys, Counsel for Appellee.
Before NORRIS, WILLIAMS and STEWART, JJ.
STEWART, J.
The defendant was tried by a jury and convicted of aggravated oral sexual battery and one count of indecent behavior with a juvenile. He was sentenced to serve 15 years at hard labor without benefit of probation, parole or suspension of sentence for aggravated oral sexual battery, and to 5 years hard labor for the indecent behavior conviction. For the following reasons, we affirm the defendant's convictions and sentences.

FACTS
The defendant met the victim's mother, H.W., in 1990. At the time, H.W.[1] had three daughters from a previous relationship, I.W. (the victim), K.W., and J.W. The defendant and H.W. began living together in 1991 when H.W. and her three daughters moved into the defendant's mother's home on Peach Street. She and the defendant later had two children together. During this time, the defendant, H.W., and the girls lived together at several locations throughout Ouachita Parish.
On the evening of June 17, 1996, Officer T.C. Dupree of the Monroe Police Department was investigating a complaint from the biological father of I.W., K.W., and J.W. about the defendant's alleged indecent behavior with a juvenile. That night, Officer Dupree notified Renee Broadnax, a crisis prevention investigator for the Ouachita Parish Office of Community Services, who performed an investigation of the allegations against the defendant. Broadnax interviewed each of the girls at their home while separated from the other family members. The girls initially denied the abuse, but I.W. eventually "broke down," began to cry and admitted the sexual contact with the defendant. I.W. described sexual intercourse, digital penetration, fondling, and oral sex. The oral sex involved the defendant putting his mouth on I.W.'s private parts and the defendant putting his penis into I.W.'s mouth.
The next day, Rita McCormick Rater, a child abuse detective with the Monroe Police Department, took over the investigation of the allegations of sexual child abuse against the defendant. She interviewed all three girls. I.W. repeated her account of the defendant's pattern of abuse, in particular his demand that she "roll" her hips. Rater also interviewed the mother, H.W., who related the defendant's desire for her to "roll" as foreplay to sexual intercourse. Rater also interviewed K.M., the defendant's cousin, and related K.M.'s statement that the defendant had sexual relations with her. I.W., K.W. and J.W. were examined on June 25, 1996 by Dr. Meade O'Boyle, a pediatrician specializing in physical and sexual abuse.
On October 2, 1996, the defendant was charged by bill of information with aggravated oral sexual battery and two counts of *112 molestation of a juvenile with regard to I.W. The state gave notice of its intent to use evidence of other crimes or wrongs committed by the defendant at his trial.

DISCUSSION

Sufficiency of Evidence
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court must first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747. However, this court's authority to review questions of fact in a criminal case does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). It is always the function of the judge or jury to assess credibility and resolve conflicting testimony. State v. Robinson, 33,720 (La.App.2d Cir.6/21/00), 764 So.2d 190; State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993). A reviewing court accords great deference to a judge's decision to accept or reject the testimony of a witness in whole or in part. State in Interest of MSS, 612 So.2d 959 (La.App. 2d Cir.1993); State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.

Aggravated oral sexual battery:
La. R.S. 14:43.4(A) provides in pertinent part:
A. Aggravated oral sexual battery is an oral sexual battery committed when the intentional touching of the genitals or anus of one person and the mouth or tongue of another is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
* * * *
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
La. R.S. 14:43.3(A) defines oral sexual battery as follows, in pertinent part:

*113 A. Oral sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, when the offender either compels the other person to submit by placing the person in fear of receiving bodily harm, or when the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender;
Oral sexual battery requires proof of general intent. State v. Williams, 98-1146 (La.App. 5th Cir.6/1/99), 738 So.2d 640.

Indecent behavior with juveniles:
Although the defendant was charged with two counts of molestation of a juvenile, in violation of La. R.S. 14:81.2(C), the jury found him guilty of one count of the responsive crime of indecent behavior with a juvenile. La. R.S. 14:81(A) provides:
Indecent behavior with juveniles is the commission of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person. Lack of knowledge of the child's age shall not be a defense.
In order to convict a defendant of indecent behavior with a juvenile, the state must prove that the defendant: (1) committed any lewd or lascivious act upon the person or in the presence of any child under the age of 17; (2) was over the age of 17 and more than 2 years older than the victim; and (3) had the intention of arousing or gratifying the sexual desires of either person. La. R.S. 14:81; State v. Collins, 32-409 (La.App.2d Cir.9/22/99), 763 So.2d 618; State v. Free, 26,267 (La. App.2d Cir.9/21/94), 643 So.2d 767, writ denied, 94-2846 (La.3/10/95), 650 So.2d 1175.
The defendant testified on his own behalf at trial and insisted that he did not commit these offenses. He notes that there was no physical evidence linking him to the offenses, and that the state relied exclusively on the testimony of a child who was only 9 years old at the time of the alleged offenses. The defendant contends that the testimony of Dr. O'Boyle failed to conclusively implicate the defendant as the perpetrator. He also observed that at the time of trial, the victim, I.W., was 14 years old and already had a 1 year old child of her own, evidencing her promiscuity. Furthermore, the defendant alleges that the victim, her sisters and her mother all had a reason to lie about the incident, noting his physical abuse of H.W. on June 17, 1996, his fight with H.W. regarding his self-admitted activities with another woman, and the fact that the defendant went out almost every night. The defendant also argues that there were inconsistencies in the testimony of the witnesses against him. The defendant said that the allegations against him arose after he and H.W. had a big fight about him leaving to go out for the night. The defendant stated that H.W. was angry with him about his relationship with another woman, and H.W. must have influenced the girls to make up the allegations of sexual abuse. The defendant related that the allegations hurt him, and he attempted to commit suicide by drinking Drano.
However, the evidence presented at trial, viewed in the light most favorable to the prosecution, was clearly sufficient to support the defendant's conviction of aggravated oral sexual battery of the victim, I.W. The evidence included the testimony of the defendant that he was 33 years old at the time of trial in May 2000, and the *114 victim's testimony that she was 14 years old at the time of trial. I.W. testified that the defendant performed oral sex on her by touching his tongue to her vagina. At trial, I.W. testified that her sexual contact with the defendant began when she was in the fourth grade at age nine. At the time of trial, I.W. was in the eighth grade and had a one-year-old son. I.W. related that the defendant would make her "roll," which she described as moving her hips back and forth, with her pants down. She stated that the contact began when the defendant moved in with her mother and occurred approximately every other day. She related that the defendant touched between her legs about 20 times to "check her." He also put his finger in her vagina about 10 times. This hurt her and caused her to bleed from her vagina. The defendant also tried to put his penis into her vagina, put his penis into her mouth and told her what to do. He also licked her between her legs, touching his tongue to her vagina, and put hair grease on her vagina. I.W. stated that these events occurred while her mother was asleep, or was either at work, the grocery store or at bingo. I.W. did not tell anyone about what was happening to her because the defendant told her he would hurt her or kill her, and he put a gun to her head on a couple of occasions. I.W. did not tell her mother about what the defendant had been doing to her until after she told the police.
Dr. O'Boyle's physical examination of I.W. revealed that I.W.'s hymenal ring was not intact, and was scarred and open more than it should have been for a girl her age. It was Dr. O'Boyle's expert opinion that I.W. had been sexually molested or abused. Dr. O'Boyle's physical examination of I.W. corroborated I.W.'s description of sexual molestation. I.W.'s description of the sexual abuse was believable because she used child-like and age appropriate language. Dr. O'Boyle also testified that it is typical for a young female victim of sexual abuse to become sexually active and promiscuous at an early age. However, Dr. O'Boyle did not testify in the presence of the jury at trial regarding the "grooming" she related at the Prieur hearing.
There was no internal contradiction or irreconcilable conflict with physical evidence. Therefore, this one witness's testimony, evidently believed by the trier of fact, was sufficient to support the facts upon which the conviction was based. State v. White, supra. In any event, the victim's testimony was corroborated by that given by Dr. O'Boyle, who stated that I.W. was 10 years old at the time of her examination on June 25, 1996, and that I.W. described oral genital sex with the defendant which included the defendant's mouth touching her vagina. The victim's testimony regarding these acts was corroborated at trial by the testimony of Rita Rater and Renee Broadnax.
The evidence was also sufficient to support the defendant's conviction of indecent behavior with a juvenile. The evidence presented at trial, including the testimony of the victim, proved that the defendant: (1) committed a lewd and lascivious act upon her or in her presence, and that she was under the age of 17; (2) was over the age of 17 and more than 2 years older than the victim; and (3) had the intention of arousing or gratifying the sexual desires of either person. La. R.S. 14:81; State v. Collins, supra; State v. Free, supra.
The evidence included proof of the defendant's and victim's ages. I.W. described sexual contact with the defendant that began while she was nine years old that included "rolling," fondling, digital penetration, and oral genital sex. The victim's testimony regarding these acts was corroborated at trial by the testimony of *115 Dr. O'Boyle, Rita Rater and Renee Broadnax. These acts were clearly performed with the intention of arousing or gratifying the sexual desires of either the defendant, the victim, or both. Viewed in the light most favorable to the prosecution, the evidence was sufficient to support the conviction of indecent behavior with a juvenile. The jury's credibility determinations will not be disturbed on appeal.

Other Crimes Evidence
Although this issue is very close, we find that the trial court properly admitted other crimes evidence. On December 11, 1998, a Prieur hearing was held at which Dr. Meade O'Boyle, a pediatric expert in child abuse, testified as to her findings upon the examination of the victim, I.W., and her younger sisters, J.W. and K.W. The examination of J.W., who was 7 years old at the time of examination in 1996, showed no physical signs of sexual abuse. However, J.W. related to Dr. O'Boyle that "when I be sleeping he be feeling on me," referring to the defendant standing near her bed and feeling the outside of her underwear with his fingers.
The physical examination of K.W., who was nine at the time of the examination, was also normal, but K.W. related that the defendant molested her for years. K.W. described the molestation as the defendant making her "roll," which consisted of her lying on the bed and moving her bottom. K.W. said that the defendant would touch her front "privacy" with his fingers, but denied sexual intercourse, anal, genital or oral genital sex. K.W. was able to tell her father, Reginald Wayne Owen, about the abuse.
Dr. O'Boyle's physical examination of the victim, I.W., who was ten years old at the time, revealed that her hymenal ring was not intact and had obviously been traumatized, consistent with penal penetration. I.W. related to Dr. O'Boyle that the defendant had molested her repeatedly for approximately five years. I.W. described sexual activities with included fondling her genital area, placing his hand up her vagina, which bled and hurt, oral genital sex, and one incidence of sexual intercourse.
Dr. O'Boyle observed that none of the three sisters appeared to have been "coached" and used simple and age-appropriate descriptions of the sexual activities. It was her expert opinion that the fondling described by the youngest girl, J.W., and the "rolling" described by the middle girl, K.W., were "grooming" by the defendant for future and more invasive sexual abuse like that the oldest girl, I.W., reported. Dr. O'Boyle described the purpose of grooming as a desensitization process used to lessen the victim's pain, to avoid injury, and to avoid detection. Dr. O'Boyle related that early promiscuity is a common but horrible side effect of repeated sexual abuse at a young age. Such children voluntarily begin to have sexual intercourse at an early age because they see themselves as sexual objects.
I.W., the victim in the instant case, did not testify at the hearing, and there was some indication that she was pregnant at the time. However, her sisters, K.W. and J.W. both testified as to the same basic facts related by Dr. O'Boyle. J.W. elaborated that the defendant would check her panties at night by the light of a cigarette lighter. J.W. related that once, when the defendant was alone with her, he told her to take off her panties to see if she "peed" in them, and then told her to go put some other panties on. J.W. was afraid of the defendant, having been disciplined by him before, and having witnessed him hit her mother. J.W. further related that one night while she pretended to be asleep, she heard the defendant "doing something" to K.W. and heard K.W. tell him to stop.
*116 K.W. stated at the hearing that the defendant would have her "roll" dressed and naked, and once had her put hair grease on her private parts and told her to "roll." The defendant told her to tell her mother that the grease was from her hair. He also offered her the twenty dollars she needed for a Valentine's Day party if she would "roll." The defendant also would check her panties to see if she urinated on herself, and would have her undress to check her panties. K.W. related that the night J.W. heard her telling the defendant to stop, he was telling her to "roll".
The defendant's 15-year old first cousin, K.M. also testified at the hearing. K.M. related that the defendant began having sex with her when she was about 9 years old. At first, he would have her take off her clothes and look at her. Then he would tell her to lie down on the bed and "roll," which she described as moving her hips. Finally, he would get on top of her and have intercourse with her. The defendant threatened to throw K.M. into the river if she told anyone, and slapped K.M. on one occasion.
Rita McCormick Rader, a former officer with the Monroe Police Department, testified as to the facts revealed during her investigation of the sexual abuse allegations against the defendant beginning in June 1996. Rader also related that I.W.'s grandmother made the initial compliant. The incident that began the investigation occurred when I.W. woke up to find the defendant sleeping in her bed with her. I.W. began her interview with Rader by describing the defendant's physical abuse of herself, K.W., J.W., and their mother, H.W. I.W. told Rader that the defendant often made her perform movements with her hips, which she called "rolling." The "rolling" that I.W. described using the anatomically correct dolls simulated sexual intercourse. Sometimes she would be naked and sometimes she would be dressed when she "rolled." The defendant also "rolled" on her, and sometimes he was naked, and sometimes he was dressed. I.W. told Rader that the incidents occurred at nighttime and during the day. The incidents also occurred when her mother was away, and when she was at home. Rader confirmed I.W.'s account that there was penile-vaginal contact. I.W. related to Rader that the defendant used his finger to penetrate her vagina and tell her that it was her period hole. His finger had blood on it when he removed it from her vagina. I.W. also described incidents of oral sex with the defendant in which she was instructed how to and was made to perform oral sex on his penis, and in which he performed oral sex on her genitalia. I.W. said that once the defendant had her put hair grease on her genitalia. The defendant also taught I.W. how to "tongue kiss".
Rader's interview with the defendant's cousin, K.M., revealed the same basic information related by K.M. at the hearing. Also, Roy Cox, an officer with the Monroe Police Department, testified regarding his investigation of allegations of rape made by N.L., the defendant's niece, in 1998. Detective Jerry Ellerman also testified regarding his investigation of that complaint. At the conclusion of the Prieur hearing, the trial court found all of the evidence presented at the hearing was admissible at trial. Specifically, the evidence of "grooming" of the victim and her younger sisters was admissible as part of the defendant's preparation and plan in preparing the girls for eventual intercourse. The court further found that the state proved by clear and convincing evidence that the defendant was the individual who had this contact with the girls and that the contact was not accidental.
*117 After giving the jury instructions regarding how it could consider evidence of other crimes, wrongs or acts, the state called I.W.'s younger sister, K.W., to testify during the trial. K.W., who was 12 years old at the time of the trial, related that the defendant made her "roll" by moving her "behind" back and forth. This activity occurred at home almost every day when her mother was sleeping or away from the house, and occurred while the family was living on South Grand and Gordon Avenue. Sometimes K.W. was dressed when the defendant would make her "roll" and sometimes she was not. The defendant also put grease on her vagina. K.W. didn't tell anyone about what the defendant was doing to her because he threatened to shoot her or throw her off the bridge on many occasions. Although K.W. didn't tell the police about the defendant's abuse until after the defendant beat her mother, K.W. denied that her mother or anyone else "put her up to" giving this testimony against the defendant.
The state also called the defendant's first cousin, K.M., to testify about other crime, wrongs or acts. K.M., who was 16 at the time of trial, testified that the defendant began "having sex" with her when she was 9 years old. K.M. related sexual activity with the defendant that included "rolling," or moving the lower part of her body. The activity occurred almost every day for about three years. K.M. stated that the defendant would take his clothes off, and tell her to pull her clothes off, and he would get on top of her. K.M. stated that the defendant's penis went inside her vagina, but her testimony was unclear regarding how often this occurred. The sexual activity occurred at her home while her mother was sleeping or away from home. K.M. related that she didn't tell anyone about what the defendant was doing because he told her twice that he would throw her into the river. One night after K.M. threatened to tell her mother, the defendant took her to the levee on South Grand and said he would throw her in and tell her mother that she jumped.
At the close of trial the jury was instructed that they may consider the other crimes evidence introduced during trial regarding the defendant's alleged molestation of two other girls for the purposes of showing the defendant's "lustful disposition to have inappropriate sexual contact with young girls."
The Louisiana Supreme Court recently addressed the issue of the admissibility of other crimes evidence in State v. Kennedy, XXXX-XXXX (La.4/03/01), ___ So.2d ___, 2001 WL 316170. In Kennedy, supra, the court said,
we have consistently restricted this judicially-recognized "lustful disposition" exception to Article 404(B) to evidence of other sexual crimes committed by the defendant against the same prosecuting victim, whether child or adult. E.g., State v. Bailey, 588 So.2d 90 (La.1991). Otherwise, the State, in seeking to introduce evidence of other crimes, wrongs, or acts of an improper sexual nature must still satisfy the requirements of the Code of Evidence and our jurisprudence. See, State v. Jackson, 625 So.2d at 149. Thus, the use of the term "lustful disposition exception" in other contexts is misleading if considered as a general exception to Article 404(B).
Notwithstanding the court's rejection of a general lustful disposition exception, the court noted it has sanctioned on a limited basis the introduction of evidence of prior improper sexual conduct in cases of child sexual abuse "where the element of intent is regarded as an essential ingredient of the crime charged, it is proper to show the intent with which the act charged was committed." Kennedy, supra (Quoting *118 State v. Cupit, 189 La. 509, 179 So. 837, 839 (1938)). However, even if independently relevant, the probative value of such evidence must be weighed against its prejudicial effect, and such evidence must meet the clear and convincing standard to be admissible. La. C.E. art. 403; State v. Jackson, 625 So.2d at 149 (La.1993). This court in State in Interest of DMH v. DMH, 27,807 (La.App.2d Cir.9/27/95), 661 So.2d 643, defined "clear and convincing" burden of proof as follows:
... [W]hich is greater than the traditional "preponderance of evidence" burden in most civil cases but less than the stringent criminal standard of "beyond a reasonable doubt," means that the State must demonstrate that the existence of the disputed fact is highly probable, that is, much more probable than its nonexistence.
The state believes the testimony of the three girls shows that the defendant took advantage of one-on-one situations with female juveniles, and was motivated by an unnatural interest in adolescent/pre-pubescent females. In order to obtain a conviction, the state will had have to prove beyond a reasonable doubt all the elements required for the crime of molestation of a juvenile. One of those elements is that defendant had the intention of arousing or gratifying the sexual desires of either himself or the victims. In other words, the state will have had to prove specific intent. Because indecent behavior with a juvenile is a specific intent crime, intent is a material issue in the instant case. It is then axiomatic that other crimes evidence presented by the state to establish an element of a crime is admissible.
Although the defendant contends he did not commit these offenses, the court found that the straight-forward and consistent testimony of all three young girls about similar sexual acts committed by the defendant upon them met the clear and convincing standard, and this finding will not be overturned on appeal absent an abuse of discretion. Because we find that the court did not err in admitting the other crimes evidence, we also find that any error in jury instruction caused by the mention of a lustful disposition exception was harmless error.

Newly Discovered Evidence
The defendant notes that a hearing was conducted outside the presence of the jury to determine the qualifications and scope of the testimony of Dr. O'Boyle. The hearing was also used to determine whether Dr. O'Boyle would be allowed to testify regarding her physical findings resulting from her subsequent 1998 examination of K.W. and J.W. The examination was conducted in October 1998 pursuant to a complaint that the mother's 19 year old boyfriend was having sex with K.W. and J.W. Also, the mother related that she found K.W. with an 11-year-old boy with her pants off and the boy on top of her. Dr. O'Boyle's physical examination revealed that K.W. was sexually active and that K.W. denied being sexually active to Dr. O'Boyle. The trial court ruled that it would not allow Dr. O'Boyle to testify regarding her 1996 examination of K.W. and J.W., or the 1998 examinations of K.W. and J.W. The defendant moved for a mistrial based on newly discovered evidence. The trial court stated that anything that happened to K.W. in 1998 was irrelevant and denied the motion for a mistrial. The defendant asserts that he objected to the ruling.
The defendant contends the information learned from Dr. O'Boyle at the hearing regarding K.W. was "newly discovered evidence". Although the defendant concedes that the alleged error was not sufficient to merit a mistrial, he asserts that the ruling *119 prejudiced the defendant in his effort to discredit K.W.'s trial testimony.
The state contends that the "newly discovered evidence" was irrelevant to the trial and was properly excluded. In particular, it asserts that the information would not negate the commission of the charged offenses.
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. The relevancy of proffered evidence depends on whether it tends to prove or disprove a material fact at issue. State v. James, 394 So.2d 1197 (La.1981).
The evidence complained of was properly excluded as irrelevant. Any information regarding K.W.'s sexual activity subsequent to the time of the instant offenses had no value in proving or disproving any material fact at issue in the defendant's trial. This argument is without merit.

Jury Sequestration
On May 3, 2000, the defendant's trial was completed and the trial court instructed the jury and gave the case over for deliberations at 3:15 p.m. At a later time, a juror indicated to the court that she had to pick up her children at 6:00 p.m. The trial court inquired of the jury as to their deliberations. The jury advised the trial court that they would not be able to reach a verdict if they deliberated any longer that evening. The court had the following discussion with counsel for the defendant and the state:
Court: I'm inclined to release them until tomorrow morning, not to sequester them. Give them firm instructions concerning not discussing the case with anybody else. We have to be here tomorrow morning anyway. I'll hear from the prosecution first and then the defense.
Mr. Harvey: Whatever the court's pleasure is.
Mr. Blue: Likewise, Your Honor. We have no objection to you doing just that.
After receiving instructions, the jury was then released to go home for the evening.
Thereafter, a hearing on a motion to examine jurors was held on August 14, 2000. The defendant was present, and the defense counsel specifically requested that the court question the jurors individually regarding whether a spouse made any comment about the case on the evening following adjournment of deliberations. The trial court expressed its intent to delve into whether there was any inappropriate outside influence on the jury verdict. The trial court concluded that the specific question requested by the defense was more narrow and could arguably exclude other persons who may have had contact and influence. The defense objected to the ruling and made the same objection as to each and every juror.
The record of the proceeding shows that the trial court examined all six jurors. Each juror was examined by the trial court. All six jurors testified that they remembered the instructions given to them by the trial court prior to their release for the night, and that no one influenced them concerning the verdict, that no one attempted to influence the verdict and that their verdicts were based solely on the evidence adduced at trial. Thereafter, the trial court concluded that the presumption of prejudice was rebutted by the jurors' testimony at the hearing, and that the verdict would not be overturned.
Although the defendant concedes that no contemporaneous objection *120 was made to the alleged error, he asserts that the trial court's releasing of the jury during deliberations without sequestration is error patent, citing La.C.Cr.P. art. 791(C) and State v. Willis, 371 So.2d 1327 (La.1979). Specifically, the defendant contends that the trial court erred in failing to ask each juror whether any spouse of any juror injected any opinion as to guilt or innocence or requested or was given any facts about the case, or gave any juror any facts about the case. The defendant asserts that the state failed to rebut the presumption of prejudice by the testimony elicited from jurors at the hearing held months after the trial.
The state asserts that, even though the provisions of La.C.Cr.P. art. 791 are strictly enforced, the presumption was affirmatively rebutted. The state contends that the testimony of the jurors at the hearing on the motion to examine revealed that the verdict was based solely on the evidence adduced at trial, and no one influenced or attempted to influence any juror concerning the verdict.
La.C.Cr.P. art. 791(C) provides that in noncapital cases, the jury shall be sequestered after the court's charge and may be sequestered at any time upon order of the court.
Noncompliance with the mandatory provisions of the article is an error patent on the face of the record, which is reviewable even without formal objection or motion. La.C.Cr.P. art. 920(2); State v. Parker, 372 So.2d 1037 (La.1979), cert. denied, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983); State v. Martin, 329 So.2d 688 (La.1976).
The purpose of the sequestration is to insulate the jurors from outside influence or the possibility thereof, even unconscious; and, in capital cases especially, the sequestration is strictly enforced so that, upon a separation of a juror after he is sworn, a presumption of misconduct arises and reversible error will be presumed. State v. Parker, 372 So.2d 1037 (La.1979), and authorities cited therein, cert. denied, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983). This jurisprudential rule is, however, limited by those cases holding that where circumstances are such as to reasonably overcome the presumption of prejudice and where it affirmatively appears that no prejudice to the accused could have resulted, the presumption may be rebutted, so that the mere separation of a juror briefly may be held to be insufficient ground to set aside a verdict. State v. Timon, 28,747 (La.App. 2nd Cir.10/30/96), 683 So.2d 315 writ denied, 96-2880 (La.4/25/97), 692 So.2d 1081; State v. Parker, supra, citing State v. Quincy, 363 So.2d 647 (La.1978) and State v. Sheppard, 350 So.2d 615 (La. 1977).
Moreover, a mistrial is a drastic remedy which should be granted only when such substantial prejudice is shown so as to prevent the reasonable expectation of a fair trial. State v. Timon, supra. In the instant case, there was no substantial prejudice shown, and the state proved affirmatively that there was no outside communication.
In State v. Timon, supra, we found that the circumstances were such as to reasonably overcome the presumption of prejudice from separation of a sequestered juror. We also found that where it affirmatively appeared that no prejudice to the defendant could have resulted, the presumption may be rebutted. In Timon, a capital case, after each individual juror was selected, the deputy allowed the juror to drive his or her personal vehicle to the motel where the jurors were staying. This was to allow the juror's relatives to pick up the vehicle or to allow the juror *121 to store the vehicle at the motel. The deputy testified that although the jurors drove their vehicles to the motel, they never left his sight, except one juror who was out of his sight for a short period. The sworn jurors were individually questioned and each testified that they had driven their cars to the hotel, either following the sheriff or the sheriff following them, after they had been sworn. Each testified that they had no outside communication concerning the case, and the record affirmatively showed that no juror received outside influence or communication during their brief separation from the other jurors. The motel was only about one mile from the courthouse. This court held that there was no substantial prejudice shown and the state proved affirmatively that there was no outside communication.
Although this issue is close, the record affirmatively shows that the defendant herein did not suffer prejudiceall six jurors testified that their verdicts were based solely on the evidence adduced at trial, and that no extraneous influence was made, or attempted, concerning their verdicts. Although the release of the jury after sequestration was error patent, we find that it was harmless error. Therefore, we hold that the trial court did not err in refusing to overturn the defendant's verdict following the hearing on the motion to examine the jurors.
Additionally, there is no authority to support the defendant's argument that the trial court's refusal to ask the jurors a specific question regarding spousal influence was error. The trial court's general questions were adequate to ascertain any possible prejudice from extraneous influence, and were inclusive of any specific inquiry regarding spousal influence. This argument is without merit.

Excessive sentence
The defendant was convicted of count one, aggravated oral sexual battery and count two, the responsive verdict of indecent behavior with a juvenile. The defendant was found not guilty of count three, molestation of a juvenile. He was given concurrent sentences of 15 years at hard labor without benefit of probation, parole or suspension of sentence for count one, aggravated oral sexual battery, and to 5 years hard labor for the indecent behavior conviction for count two. The defendant's motion to reconsider sentence was timely filed, and denied after a hearing.
The defendant concedes in brief that the trial court adequately complied with La. C.Cr.P. art. 894.1 by sufficiently articulating his sentencing considerations. However, the defendant argues that the record does not support the sentences for this first felony offender with no prior sex offense convictions. The defendant notes that his prior record consisted of charges that were ultimately dismissed, and contained no convictions for serious misdemeanor or felony convictions. He further argues that the judge placed great emphasis on the fact that other children had been affected by the defendant's sexual conduct and that he must have had a lustful predisposition toward pre-adolescent girls. The defendant contends that these aggravating factors involved the highly prejudicial other crimes testimony, were not based upon the crimes for which the defendant was sentenced and should not have been used to increase his sentence. The defendant also alleges that the victim's age was articulated as a sentencing factor, but was an impermissible factor when the age of the victim is already an element of the offense, citing State v. Norrell, 614 So.2d 755 (La.App. 2d Cir.1993).
The state contends that the defendant faced a 50-year exposure on his original *122 charges, and his sentence exposure was significantly reduced to 27 years by the jury finding him guilty of aggravated oral sexual battery and indecent behavior with a juvenile. The state also notes the defendant's sentences were less than the maximum possible for each offense, and that the offenses were imposed concurrently rather than consecutively. The state further points to the trial court's statement that, based upon the victim's testimony, the defendant's convictions did not adequately describe his criminal conduct. The trial court referred to the fact that the abuse occurred on numerous occasions and that the defendant could have been convicted of aggravated rape in light of the victim's testimony regarding sexual intercourse. The trial court further considered the fact that the abuse occurred while the children were entrusted to him for his care and supervision. The state disputes the defendant's contention that the young age of the victim could not be considered because her age was an element of the crime, citing State v. Whitney, 33,800 (La.App.2d Cir.11/15/00), 772 So.2d 945 and State v. Mickens, 31,737 (La.App.2d Cir.3/31/99), 731 So.2d 463, writ denied, 99-1078 (La.9/24/99), 747 So.2d 1118.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating and mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La. App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir. 1988), writ denied, 521 So.2d 1143 (La. 1988). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385; State v. Callahan, 29,351 (La. App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, we will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
In State v. Whitney, 33,800 (La.App.2d Cir.11/15/00), 772 So.2d 945, we found that the trial court was not wrong in considering the very young age of the victim in that case, stating:
Recently, in State v. Mickens, 31,737 (La.App.2d Cir.3/31/99), 731 So.2d 463, *123 this court noted that La.C.Cr.P. art. 894.1 does not prohibit the consideration of the victim's age even when it is an element of the crime, and even though the now repealed Felony Sentencing Guidelines specifically prohibited consideration of essential elements of the offense of conviction as aggravating factors, citing State v. Norrell, 614 So.2d 755 (La.App. 2d Cir.1993). In Mickens, we stated: "[W]e can find no case not controlled by the guidelines prohibiting such consideration." Indeed, the third circuit has recently noted that LSA C.Cr.P. art. 894.1 contains no such prohibition. See, State v. McDowell, 98-391 (La.App. 3rd Cir.10/7/98), 720 So.2d 735; State v. Mickens, supra, at note 4. Here, the victim was only four years old, which is considerably younger than the threshold age of twelve. The trial court did not err in considering the victim's age as an aggravating factor.
Whoever commits the crime of aggravated oral sexual battery shall be punished by imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than 20 years. La. R.S. 14:43.4(C).
La. R.S. 14:81 C provides:
Whoever commits the crime of indecent behavior with juveniles shall be fined not more than five thousand dollars, or imprisoned with or without hard labor for not more than seven years, or both, provided that the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with the provisions of Code of Criminal Procedure Article 893.
A review of the record supports the imposition of the defendant's sentences of 15 years at hard labor without benefit of probation, parole or suspension of sentence for aggravated oral sexual battery, and 5 years hard labor for indecent behavior with a juvenile. The defendant concedes in brief that the trial court adequately complied with La.C.Cr.P. art. 894.1 by sufficiently articulating his sentencing considerations. The record also shows that the defendant's lack of a serious prior criminal record was given due consideration. However, there is no requirement that specific matters be given any particular weight at sentencing. State v. Callahan, supra; State v. Jones, supra. Also, it was not improper for the trial court to consider "other crimes" evidence because sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. Finally, the trial court was not wrong in giving consideration to the young age of the victim even though the victim's age was an element of the crime. State v. Whitney, supra; State v. Mickens, supra.
From this record, it cannot be said that the defendant's sentences were constitutionally excessive. The defendant's pattern of lascivious behavior with children who had been entrusted to his care more than justified sentences that were less than the maximum sentences for the offenses of which the defendant was convicted. The sentences for these crimes are not grossly disproportionate. When viewed in light of the harm done to society, the sentences for these crimes under these circumstances do not shock the sense of justice. State v. Hogan, supra; State v. Bradford, supra. This assignment is therefore without merit.

CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.
NORRIS, C.J., concurs with written reasons.
*124 NORRIS, C.J., concurs.
I respectfully concur. On the record presented, I cannot dispute the majority's conclusion that no actual prejudice resulted from the violation of sequestration: all jurors denied any improper communications with their spouses. Notably, however, the hearing to examine jurors was held several months after trial.
Despite this factual finding, an overnight violation of La.C.Cr.P. art. 791 C stretches the concept of "harmless error" almost to the breaking point and virtually negates the sequestration rule. This, I feel, validates the sound rationale of State v. Willis, 371 So.2d 1327 (La.1979). The better rule may well be that a separation of this length creates a presumption of prejudice that cannot be rebutted and results in reversible error. For these reasons, I respectfully concur.
NOTES
[1] La. R.S. 46:1844(W) prohibits the public disclosure of the name, address, or identity of crime victims who at the time of the commission of the offense are minors and victims of sex offenses.