764 So.2d 190 (2000)
STATE of Louisiana, Appellee,
v.
Joseph Allen ROBINSON, Allen J. Robinson and Josh M. Bounds, Appellants.
No. 33,720-KA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 2000.
*192 David L. White, Bossier City, Counsel for Appellants.
Richard Ieyoub, Attorney General, William R. Jones, District Attorney, Robert E. Bethard, Assistant District Attorney, Counsel for Appellee.
Before GASKINS, CARAWAY, KOSTELKA, JJ.
KOSTELKA, J.
Joseph Robinson, Allen Robinson and Josh Bounds (collectively referred to as "defendants") were each ticketed, convicted and sentenced for violations of La. R.S. 56:116.3(A)(1)(b), (F) and La. R.S. 56:116(B)(1), relating to the illegal hunting of deer. After defendants were convicted as charged, they appealed the convictions contending that the evidence was insufficient to convict them. Finding errors patent, we reverse the convictions of Allen J. Robinson ("Allen") and Josh M. Bounds ("Bounds") and vacate the sentence imposed on Joseph Allen Robinson ("Robinson").[1]

*193 FACTS
Sergeant Billy Crawford ("Crawford") of the Louisiana Department of Wildlife and Fisheries received complaints of someone "spotlighting"[2] in the Social Springs area of Red River Parish. Specifically, Crawford had received three or four complaints of a dark and white, four-wheel drive, Bronco-type vehicle spotlighting and shooting in a gravel pit area near some homes. Crawford and Officer Jimmy Rayburn ("Rayburn") set up a "stake-out" of the area shortly after dark on the evening of November 1, 1998. Crawford parked near the edge of a wooded area off the road about a half to quarter mile from the gravel pit. Rayburn was at an elevated spot at the gravel pit. The two men communicated with one another by radio.
Crawford testified that the defendants' vehicle was the seventh or eighth vehicle that came down the public road known as Parish Road 326. He notified Rayburn of the approaching vehicle. After Rayburn replied to Crawford that he saw the vehicle coming, and it was shining a spotlight, Crawford told him to "shut them down." Rayburn subsequently stopped the suspect vehicle.
When the suspects pulled into a side drive, Rayburn parked behind the vehicle and switched on his lights. The vehicle was an Oldsmobile four-door sedan. Crawford immediately arrived at the scene and observed Rayburn remove a .257 (Roberts) Caliber Remington 700 rifle, with a scope, from the vehicle. Testimony confirmed that this was not a small game rifle, but a rifle for large game, such as deer. The gun had three shells in the magazine. Rayburn testified that he recovered the rifle from the back floorboard of the vehicle; the breech was open and a live round was on the floorboard. Also recovered from the vehicle was a police-type flashlight and a Q-beam spotlight, a high intensity, high candle-power, hand-held flashlight that is powered by a twelve-volt charge, e.g., an automobile cigarette lighter.
Both officers testified that the spotlight was plugged into the cigarette lighter. Rayburn also stated that he definitely saw a spotlight being used from the front passenger side of the vehicle, despite Crawford's written report which stated that it "appeared" that the defendants were using a spotlight. Rayburn was certain that he saw the spotlight being used from the vehicle.
All three defendants were ticketed for violations of La. R.S. 56:116.3(F), hunting during illegal hours, La. R.S. 56:116(B)(1), hunting deer from a moving vehicle, and La. R.S. 56:116.3(A)(1)(b), hunting deer from a public road, and then taken to their parents' homes.
At trial, each defendant confirmed that Robinson and Allen picked up Bounds from hunting prior to their going to a birthday party at Bounds' house. Bounds testified that when he got into the vehicle, he ejected one bullet, placed it on the floor and left the breech open. The three then went to the party but soon left to go riding around. When Rayburn stopped them, they were turning their vehicle around to return to the party. Each denied that anyone was spotlighting from the vehicle. They claimed that the spotlight was not plugged in but was in the back seat wrapped up and had been used the night before to locate a pirogue at a pond. The gun had not been fired.

DISCUSSION

Errors Patent

Jurisdiction
The affidavits (tickets) charging Allen and Bounds indicate that the two youths were sixteen years old at the time of the offenses and the trial of this matter. *194 The court minutes reflect that counsel waived these defendants' right to trial in juvenile court and moved to have the charges consolidated and tried with Robinson.[3] We find no legislative or jurisprudential authority that permits a waiver of this kind.[4]
When a child[5] over the age of ten commits an act which, if committed by an adult, would be an offense under the statutes and ordinances of this state, then the act is considered a delinquent act. La. Ch.C. art. 804(3). In such cases, the district attorney may commence a delinquency proceeding which "shall be commenced by a petition" in juvenile court. La. Ch.C. art. 842 et seq. A court exercising juvenile jurisdiction has exclusive original jurisdiction over delinquency proceedings except in specific instances provided by law. La. Ch.C. art. 303 and see text of footnote 4, supra.
In this instance, the charged offenses are not included in the lists of offenses for which juvenile jurisdiction may be waived or transferred to criminal court. See La. Ch.C. arts. 305(A), 305(B)(2),(3), and 857. Moreover, even though the record is not altogether clear as to whether the district court was exercising juvenile jurisdiction when the affidavits were filed,[6] the assistant district attorney did not file a petition to commence a delinquency proceeding as required by law. La. Ch.C. art. 842. Rather, the assistant district attorney began a criminal prosecution of the juveniles by filing the three affidavits of the offenses in the district court charging them with the offenses listed. Under these circumstances, we find that the court was without jurisdiction to try these juveniles as adults. These convictions must be reversed and the sentences vacated.[7] These matters are, therefore, remanded for further proceedings in accordance with these reasons.

Robinson's Sentence
By contrast, the state filed a single bill of information charging Robinson with the three hunting offenses. Robinson was found guilty and sentenced to a 270-day suspended jail sentence in addition to $1800 in fines.
Generally, when two or more charges are joined for trial, the aggregate punishment which may be imposed determines whether the right to trial by jury exists. State v. McCarroll, 337 So.2d 475 *195 (La.1976). If the total potential punishment exceeds six months imprisonment, an accused is entitled to a jury trial. La.C.Cr.P. art. 779; State v. Eppinette, 478 So.2d 679 (La.App. 2d Cir.1985). Here, Robinson's potential punishment was nine months or 270 days.
Nevertheless, under the provisions of La.C.Cr.P. art. 493.1, the prosecution may elect to join all misdemeanors in one bill of information. In such a case, the defendant's sentencing exposure is limited to six months imprisonment and, therefore, he is not entitled to a jury trial. State v. Robinson, 97-686 (La.App. 5th Cir.01/14/98), 707 So.2d 81. In this instance, although the three misdemeanors were joined in a single bill, the court sentenced Robinson to a nine-month suspended jail term, contrary to the provisions of La.C.Cr.P. art. 493.1.
In State v. Shroyer, 96-307 (La.App. 5th Cir.10/01/96), 683 So.2d 806, the bill of information charged defendant with three misdemeanors. The trial court sentenced the defendant to three six-month sentences to be served consecutively. Under the authority of La.C.Cr.P. art. 881.4(A), the appellate court annulled and vacated the illegal sentence and remanded the matter for resentencing.
In State v. Ainsworth, 528 So.2d 599 (La.App. 2d Cir.1988), the defendant was convicted of two offenses and sentenced to consecutive jail terms of six and three months. Granting the petitioner's writ application, this court reversed the conviction and remanded the case due to defects in the bill of information. However, the court noted that the instant charges, if both were misdemeanor offenses, could not have yielded a sentence in excess of six months, citing La.C.Cr.P. art. 493.1. The court stated, "The sentence previously imposed was patently excessive and would have been subject to reduction or to remand for resentencing. The same restriction will apply to any subsequent sentencing if misdemeanors are jointly billed."
In this case, because the three misdemeanors were joined in a single bill of information and the sentence imposed exceeded the statutory limit of six months, the sentence is illegal and will be vacated. It will, therefore, be necessary that we remand for resentencing pursuant to La. C.Cr.P. art. 881.4(A).

Sufficiency of the Evidence
As previously noted, when two or more misdemeanors are joined in a single bill of information, the case is not triable by a jury, and is, therefore, not appealable. La.C.Cr.P. art. 912(C); State v. Robinson, supra. A misdemeanor defendant's proper remedy is to file a writ of review with this court in accordance with our grant of supervisory jurisdiction. Id. In the interest of judicial economy, however, we have in the past considered non-appealable matters filed as appeals as an exercise of our supervisory jurisdiction. See State v. Shroyer, supra, where this court reviewed a non-appealable case as an appeal even though a legal sentence would render the case non-appealable.
Based upon this authority, we assign this case for summary disposition without oral argument under URCA 2-11.3 and consider the sufficiency of the evidence arguments raised by Robinson.
Specifically, Robinson argues that the state failed to prove he was guilty of hunting.
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Nevertheless, the reviewing court may not disregard its duty to consider whether the evidence is constitutionally sufficient simply because the record contains evidence that tends to support each fact necessary to *196 constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988).
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of events; rather, when evaluating the evidence in the light most favorable to the state, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Davis, 92-1623 (La.05/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
Robinson first argues that the only evidence connecting him to the act of hunting was the officers' claim that the boys were shining a spotlight out of the vehicle. He contends, however, that Crawford's report, which indicated that Rayburn told him the vehicle "appeared" to be spotlighting and omitted the fact that the spotlight was plugged in, casts a reasonable doubt on the issue of his guilt. Of course, it is always the function of the judge or jury to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir. 1992), writ denied, 617 So.2d 905 (La. 1993). At trial, Crawford testified that his use of the word "appeared" in the report did not adequately reflect what Rayburn told him at the time of the incident. He also stated that he saw the spotlight plugged into the cigarette lighter when he approached the vehicle. He explained that he did not place that fact in his report because he did not attach any relevance to it at the time. Obviously, the trial court accepted both Crawford's explanation of the report and Rayburn's testimony that he unequivocally saw spotlighting from the vehicle and that the spotlight was plugged into the vehicle. We decline to disturb this credibility determination.
Robinson also argues, however, that even if both officers' testimony is accepted as true, there still exists insufficient evidence to prove that he was "hunting" as defined by Louisiana statute. The trial court concluded that shining the spotlight from the vehicle constituted an attempt by a means or device to hunt or take deer. We agree.
Hunting is statutorily defined as attempting to take. La. R.S. 56:8(55). Take means, in its different tenses, the attempt or act of hooking, pursuing, netting, capturing, snaring, trapping, shooting, hunting, wounding, or killing by any means or device. La. R.S. 56:8(95).
When viewed in the light most favorable to the prosecution, evidence of three young men in a vehicle carrying a magazineloaded, high-powered rifle while shining a spotlight into a secluded rural area known to have a large deer population is sufficient proof of an attempt to take under La. R.S. 56:8(55), (95).
Nevertheless, Robinson argues that the evidence does not exclude the reasonable hypothesis that the spotlight was used to view houses or individuals. We cannot find this hypothesis to be a reasonable one, considering the secluded area, the testimony which indicated that the nearest house to the gravel pit was at least one-fourth mile away, and that there was only one other house near the area.
Nor do we agree that it is reasonable to conclude that Robinson was spotlighting game with no intent to shoot, considering the presence of a magazineloaded, high-powered rifle within the reach of the occupants of the vehicle. Indeed, even the convenient explanation for the presence of the gun, i.e., that after Allen and Robinson picked up Bounds from hunting to go to a party at his house, he unloaded the gun, intentionally placed the bullet on the floorboard but left the breech open and never removed the weapon even after arriving at his *197 home, is highly suspect. Rather, the reasonable conclusion, as found by the trial court, is that the gun was intended for shooting the spotlighted game. The strength of this inference is not diminished by the fact that there was no shell in the chamber. By simply pulling the breech back slightly further and bringing it forward to close it, another live round would quickly be placed in the chamber, rendering the rifle ready to fire. Furthermore, it is not unreasonable to conclude that the round on the floorboard was probably very quickly and recently ejected from the chamber, considering the presence of a live round on the floor with the breech open and three live rounds in the magazine.
Accordingly, when viewed in the light most favorable to the state, the testimonial and physical evidence supports the reasonable conclusion that Robinson was attempting to hunt deer by means and under circumstances proscribed by law to the exclusion of every possible alternative hypothesis of innocence. Under these circumstances, we find no merit to this assignment of error.

CONCLUSION
For the foregoing reasons, the convictions and sentences of Allen J. Robinson and Josh M. Bounds are reversed and vacated and these matters are remanded for further proceedings commensurate with this opinion. The conviction of Joseph Allen Robinson, is affirmed; the sentence is annulled and vacated and the matter is remanded to the trial court for resentencing in accordance with this opinion.[8]
CONVICTIONS REVERSED AND SENTENCES VACATED; REMANDED. CONVICTION AFFIRMED; REMANDED FOR RESENTENCING.
NOTES
[1] Robinson received fines of $1200, $250 and $250 and 120-, 90- and 60-day suspended sentences for each offense; Allen and Bounds received fines of $1,000, $250, and $100 and 120-, 90- and 60-day suspended sentences for each offense.
[2] Spotlighting is a method of illegally hunting nocturnal creatures such as deer with a bright, directional light, a "spotlight," which is used to locate the animal. The animal is stunned by the light and freezes, allowing the hunter to shoot the animal.
[3] The record is silent on Robinson's age. The charges filed against him were brought by a single bill of information which contained no information regarding his age.
[4] Under some circumstances, a juvenile may be prosecuted in criminal court. See La. Ch.C. art. 305(A) providing for a non-discretionary legislative waiver of juvenile jurisdiction when a juvenile fifteen years old or older commits first or second degree murder, aggravated rape or aggravated kidnapping, and, La. Ch.C. art. 305(B)(3), which provides for a discretionary prosecutorial waiver as to fourteen types of felonies enumerated in subsection (B)(2) of the statute. The Louisiana Children's Code also provides for transfers to criminal court for criminal prosecution if a delinquency petition has been filed against a child fourteen or older for eight enumerated felonies, provided that the state meets its burden of proof for such a transfer from juvenile court. La. Ch.C. art. 857 et seq.
[5] For purposes of delinquency proceedings, a child is any person under the age of twenty-one who commits a delinquent act before attaining seventeen years of age. La. Ch.C. art. 804(1).
[6] The court minutes regarding these two defendants are entitled Juvenile Minutes.
[7] Were Allen and Bounds not juveniles, we would still be required to reverse the convictions and vacate the sentences on the grounds that they were denied their constitutional right to a jury trial; the aggregate sentences for the three charged offenses exposed them to sentences in excess of six months imprisonment and also to fines in excess of $1000 dollars. La. Const. Art. I, § 17; State v. Hornung, 620 So.2d 816 (La.1993); cf. La. C.Cr.P. art. 779. Even though at the time of defendants' sentencing, a person charged with a violation of La. R.S. 56:116.3(F) was exempt from a jury trial, it is the consolidation of the offenses that implicates the constitutional right to a jury trial.
[8] The trial court is remainded to inform Robinson of the prescriptive period for post-conviction relief, as required by La.C.Cr.P. art. 930.8. We also note that the trial court failed to order forfeiture of the rifle seized in connection with these offenses in accordance with La. R.S. 56:36. This error arguably renders the sentence illegally lenient. Because the state has not raised this issue on appeal, we may not correct it or remand for resentencing. State v. Fraser, 484 So.2d 122 (La. 1986). For the same reasons, we also ignore the trial court's stay of the fines imposed upon the defendant pending this appeal. La. C.Cr.P. art. 912.1(C)(2).