830 So.2d 368 (2002)
STATE of Louisiana, Appellee
v.
Lynetta G. ERVEN, Appellant.
No. 36,332-KA.
Court of Appeal of Louisiana, Second Circuit.
October 23, 2002.
Rehearing Denied December 5, 2002.
*369 Louisiana Appellate Project, by J. Wilson Rambo, for Appellant.
Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, Charles Minifield, Jason T. Brown, Assistant District Attorneys, for Appellee.
Before WILLIAMS, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
Defendant, Lynetta G. Erven, was convicted by a jury of second degree murder and, pursuant to La. Ch.C. art. 857(B), sentenced to imprisonment at hard labor until her 31st birthday. Defendant appeals. For the reasons stated herein, we vacate and set aside Defendant's conviction and sentence.

FACTS AND PROCEDURAL BACKGROUND
Defendant and a "young black male" approached Bee Bops Grocery in Cullen, Webster Parish, Louisiana, just before closing time, at approximately 10:00 p.m. on November 5, 1996, with the intent to rob the employees as they left the store. As two employees, Barbara Cleveland and Ryan Peck, and the father of the owner of the store, Herman DeLoach, were exiting the store, the young black male shot Mr. DeLoach several times. Mr. DeLoach later died as the result of the shooting. Ms. Cleveland and Mr. Peck fled the scene unharmed. After a short police investigation, Defendant and one Jamar Webb were arrested on November 6, 1996. Webb gave a voluntary statement, in which he confessed to shooting Mr. DeLoach during a robbery attempt. A statement was also obtained from Defendant, in which she admitted that she had accompanied Webb to the store that night and was present during the shooting. Defendant was 14 years old at the time the crime was committed.[1]
On November 8, 1996, the judge in Ward Two Juvenile Court, City of Springhill, signed a detention order authorizing the Northwest Louisiana Juvenile Detention Center to hold Defendant until further orders of the court. The record does not show that a delinquency petition was timely filed in Ward Two Juvenile Court. In a subsequent hearing, however, the State and Defendant both argued that there was an undated delinquency petition in Juvenile *370 Docket No. 873-C, the proceeding in Ward Two Juvenile Court, seeking the adjudication of Defendant as a delinquent for the offense of accessory after the fact of second degree murder of Herman E. DeLoach. Despite an order by this court requesting the same, no copy of this "original" petition has been placed into the record.
On November 12, 1996, Defendant appeared in the 26th Judicial District Court ("26th JDC"), Juvenile Court, and stipulated to continued custody with the State and supervision by the Department of Public Safety and Corrections at the Juvenile Detention Center.
The juvenile records provided indicate that the case was then sent back to Ward Two Juvenile Court. The only delinquency petition in the record before us is also not dated; however, the "Chronological Index" furnished by the clerk of that court indicates that the delinquency petition was filed on November 20, 1996. The petition asks that Defendant be adjudicated a delinquent for being a principal in the first degree murder of Herman E. DeLoach on November 6, 1996. The subpoenas for the hearing on that petition are dated November 20, 1997, and the "Admit/Deny Hearing Letter" to Defendant's counsel is dated November 24, 1997. The hearing date on the subpoenas and the admit/deny letter is December 3, 1997. The discrepancy between these dates raises the possibility that the November 1996 filing date in the "Chronological Index" is a typographical error and that the actual filing date for the petition was in November 1997.[2]
Accordingly, it appears from the record before us that, after the juvenile proceeding began, the next activity in the case was on December 3, 1997, over one year after Defendant was continued into custody in juvenile detention, at an appearance hearing on the "second" petition. At that hearing, the State represented to the juvenile court that a formal petition had been filed. The State further represented that the charge was accessory after the fact to second degree murder, but that the State was orally amending that petition to show a charge of principal to first degree murder. The State also provided notice that it would be filing a motion to transfer the case to district court, pursuant to La. Ch.C. art. 857.[3] The juvenile court appointed Defendant the same counsel that had represented her in the juvenile proceedings to represent her in the 26th JDC. On that same day, the State filed the motion with the Ward Two Juvenile Court to transfer the first degree murder charge to the 26th JDC, to try Defendant as an adult. A hearing on the motion to transfer was set for January 22, 1998.
At the hearing on the motion to transfer, testimony was adduced concerning the facts surrounding the offense and Defendant's juvenile record. At the conclusion of the hearing, the juvenile judge granted *371 the State's motion to transfer the case to district court. A judgment to this effect was signed on January 27, 1998. The record indicates Defendant was in juvenile detention from the date of her arrest until the transfer of her case to district court.
The minutes of the 26th JDC reflect that, on January 29, 1999, over one year from the date the juvenile court transferred the case to district court, "[t]he defendant appeared in open Court on a tentative charge of Accessory to First Degree Murder, and Eric Johnson was appointed by the Court."
On March 22, 1999, the State filed a bill of information charging Defendant with accessory after the fact to first degree murder, alleging that she, "did harbor, conceal or aid Jamar Webb, knowing or having reasonable grounds to believe that he had committed a felony, First Degree Murder." On the same date, Defendant appeared in open court and entered a plea of not guilty. A status conference was set for April 19, 1999.
The minutes further show that, on April 19, 1999, the status conference was passed to April 23, 1999, and on April 23, 1999, the status conference was passed to May 24, 1999.
On May 10, 1999, more than two years after Defendant was taken into custody, and over one year after the case was transferred to district court, the grand jury handed down an "amended"[4] true bill of indictment, charging that Defendant "[d]id aid and abet Jamar Webb in the commission of first degree murder of HERMAN E. DELOACH...." The grand jury also issued a true bill on the charge of Defendant being an accessory after the fact to first degree murder. On May 21, 1999, Defendant appeared in open court and pled not guilty to both charges.
On December 12, 1999, counsel for Defendant appeared in open court and a joint motion for continuance was granted; the case was set for trial on April 24, 2000. The minute entry for April 24, 2000, shows that "[t]he defendant Erven appeared in open Court and case is passed to April 26, 2000." The minute entry for April 27, 2000, shows, "[c]ase is passed to August 28, 2000 for the defendant."
On January 22, 2001, Defendant filed a Motion to Quash Indictment, arguing that she was originally arrested on November 6, 1996, the matter transferred to district court on January 22, 1998, and that the matter had not been tried within the time limitations of La.C.Cr.P. art. 578.[5]
A hearing was held on the motion to quash on February 5, 2001. Defendant argued that the prosecution began when the juvenile proceedings began in 1996, and that two years had elapsed without the matter going to trial. The State argued that Defendant was originally prosecuted in the juvenile court for accessory after the fact to first degree murder and that there is no time limitation for prosecuting for the separate offense of first degree murder.
*372 The State further argued that the prosecution for first degree murder was commenced on May 10, 1999, when the grand jury issued a true bill for first degree murder, and that three years had not elapsed since the institution of the prosecution.
The trial court granted the motion to quash as to the charge of accessory after the fact to first degree murder. As to the first degree murder charge, however, the trial court found the prosecution was instituted on May 10, 1999, the date the indictment was filed, and that, pursuant to La. C.Cr.P. art. 578, the State had three years from that date to try Defendant.
The matter was ultimately set for trial on January 22, 2002. On that date, the State filed an "Amended Bill of Information," amending the original charge of first degree murder to second degree murder. As previously stated, the jury found Defendant guilty of second degree murder. Defendant waived delays in sentencing and the trial court sentenced her to be incarcerated with the Louisiana Department of Corrections for life, to the age of 31 years. This appeal ensued.

DISCUSSION
On appeal, Defendant raises seven assignments of error involving essentially the following four issues: (1) sufficiency of the evidence to sustain her conviction; (2) excessiveness of her sentence; (3) the propriety of the transfer of the charge to district court from juvenile court; and (4) whether or not her trial was timely pursuant to La.C.Cr.P. art. 578 (denial of her Motion to Quash Indictment as to the charge of first degree murder). Finding error patent in the juvenile record, we conclude that Defendant's case was improperly removed to the district court and that the district court lacked jurisdiction to proceed with Defendant's prosecution. We further find that, once in district court, Defendant was not timely tried under article 578. On either basis, our conclusions require that Defendant's conviction and sentence be vacated and set aside. As such, note that our discussion is limited to these two issues and we pretermit any discussion of the other issues raised by Defendant.
Errors patentjurisdiction
La. Const. art. 5, Sec. 19, gives the jurisdiction to adjudicate juveniles to the state's juvenile courts, but allows the legislature to create a procedure to remove certain serious crimes, including first or second degree murder by juveniles 14 years old or older, to the district courts.[6] *373 That procedure is contained in La. Ch.C. arts. 857 to 864. La. Ch.C. art. 857 provides as follows:
A. The court on its own motion or on motion of the district attorney may conduct a hearing to consider whether to transfer a child for prosecution to the appropriate court exercising criminal jurisdiction if a delinquency petition has been filed which alleges that a child who is fourteen years of age or older at the time of the commission of the alleged offense but is not otherwise subject to the original jurisdiction of a court exercising criminal jurisdiction has committed any one or more of the following crimes:
(1) First degree murder.
(2) Second degree murder.
(3) Aggravated kidnapping.
(4) Aggravated rape.
(5) Aggravated battery when committed by the discharge of a firearm.
(6) Armed robbery when committed with a firearm.
(7) Repealed by Acts 2001, No. 301, § 2.
(8) Forcible rape if the rape is committed upon a child at least two years younger than the rapist.
B. Notwithstanding any other provision of law to the contrary, a fourteen-year-old who is transferred pursuant to this Article and subsequently convicted shall not be confined for such conviction beyond his thirty-first birthday.
La. Ch.C. art. 858 provides:
A. On motion of the district attorney, the child, or on its own motion, the court may conduct a transfer hearing. Such motion may be filed at any time following the filing of a delinquency petition but shall be heard prior to the adjudication hearing or acceptance of an admission to the delinquency petition.

B. Notice in writing of the time, place, and purpose of the hearing must be given to the child and his parents and other custodian, if any, at least ten days before the hearing. (Emphasis added.)
Since the motion to transfer must be heard prior to the adjudication hearing or acceptance of admission to the delinquency petition, we must look to the proceedings that took place while the case sub judice was within the jurisdiction of the juvenile court in order to adequately examine the propriety of the transfer of Defendant's case to district court. Concerned about the incomplete juvenile records and allegations as to undated delinquency petitions in this case, this court, on September 10, 2002, ordered the Ward Two Juvenile Court and the 26th JDC to furnish all pleadings and transcripts of all juvenile proceedings involving this defendant and the November 5, 1996 offense.
Error patent review is mandated in all criminal cases. La.C.Cr.P. art. 920; State v. Bryant, 29,344 (La.App.2d Cir.5/7/97), 694 So.2d 556. Further, although the Children's Code is silent as to error patent review of juvenile criminal proceedings, such a review is mandated by La. Ch.C. art. 104 and La.C.Cr.P. art. 920. A review of the record in this case reveals the following errors patent.
The supplemental record filed reveals that almost none of the requirements of the Children's Code for adjudicating a child delinquent were followed in this case. The only juvenile court "activity" shown by the record is the filing of the *374 undated, unstamped "second" petition charging Defendant as a principal to first degree murder; the continuation hearing on November 12, 1996, at which Defendant stipulated that probable cause existed to retain her in custody on the charge of principal to second degree murder; and the appearance hearing on December 3, 1997, during which the State gave notice of its intent to request a transfer to district court. By December 3, 1997, more than one year had elapsed since the continued custody hearing.
La. Ch.C. art. 843 provides that a delinquency proceeding is commenced by a petition being filed "within forty-eight hours of the hearing to determine continued custody." Article 843 further provides that "[i]f no petition is filed within the applicable time period, the child shall be released." (Emphasis added). As previously stated, on November 12, 1996, Defendant appeared in court and stipulated to "continuing custody at detention center." There is no proof in the record that a petition was timely filed and failure to do so is error patent. See State v. Robinson, 33,720 (La.App.2d Cir.6/21/00), 764 So.2d 190 (finding that the district court lacked jurisdiction to prosecute a juvenile where the assistant district attorney failed to file a delinquency petition as required by La. Ch.C. art. 842, but, instead, filed affidavits charging the juvenile in district court, despite the juvenile's waiver of jurisdiction and request for transfer where the charged offense was not one where jurisdiction could be waived or transferred).
La. Ch.C. art. 854 requires a child continued in custody to answer the State's petition. At an appearance hearing to answer the State's petition, the court is required to first determine if the child is capable of understanding his rights, and if so, to advise the child of his rights, including the nature of the proceedings, the nature of the allegations of the petition, the right to an adjudication hearing, the right to appointed counsel and the right against self-incrimination. La. Ch.C. art. 855. Again, the record reveals no answer filed whatsoever, nor does it reflect that a timely appearance hearing was ever held for the trial court to advise Defendant of the rights listed in La. Ch.C. art. 855. It is "error patent for the record to fail to reflect that the juvenile was advised of his rights when he appeared to answer the allegations of the delinquency petition." State ex rel. K.G., 34,535 (La.App.2d Cir.1/24/01), 778 So.2d 716.[7]
La. Ch.C. art. 877(A) requires that, if the child is continued into custody, "the adjudication hearing shall commence within thirty days of the appearance to answer the petition." (Emphasis added). La. Ch.C. art. 877(C) provides, "[i]f the hearing has not been commenced timely, upon motion of the child, the court shall release a child continued in custody and shall dismiss the petition." La. Ch.C. art. 877(D) provides, "[f]or good cause, the court may extend such period." Once again, the record in the case sub judice does not show that the State ever scheduled a timely adjudication hearing. Likewise, we find no evidence that Defendant ever moved to dismiss the petition for failing to timely hold the adjudication hearing. In State in Interest of R.D.C., Jr., 93-1865 (La.2/28/94), 632 So.2d 745, the supreme court held that this 30 day time period is mandatory and that "it is incumbent on the *375 state to make a showing of good cause and obtain an extension before the period has run. In the event that a good cause extension is not granted and the period runs out, the state may not refile its petition." (Emphasis in the original opinion.)
La. Ch.C. art. 892 provides that a disposition hearing "shall be conducted within thirty days after the adjudication. Such period may be extended for good cause." The failure to conduct a timely disposition hearing is an error patent. State ex rel. M.N.H., 01-1218 (La.App. 3d Cir.2/6/02), 807 So.2d 1149, writ denied, 02-1041 (La.5/24/02), 816 So.2d 857. In State ex rel. K.G., supra, this court held that a disposition hearing is mandatory under La. Ch.C. art. 892 and that the child's failure to object to a lack of a hearing or the right to present evidence does not amount to a waiver of the right to that hearing. The record before us contains no evidence that there was ever any disposition hearing in the juvenile case, nor were there any timely reviews of any disposition to determine if the disposition was working.
The question thus becomes whether one year after taking the defendant into juvenile detention, and well beyond the delays for filing a petition, requiring an answer, requiring advice of rights, an adjudication and disposition hearings, the State can file a new petition alleging new charges and a motion to transfer the case to district court under La. Ch.C. art. 858. In support of its motion to transfer, the State argued that, because there had not been an adjudication on the "original" earlier petition (the petition that allegedly was filed, but is missing from the record), the "new" or "second" petition (the only petition in the record, which is undated and unstamped) and motion to transfer were timely. We disagree. This court will not overlook the clear error patent in not timely filing a petition, setting an appearance hearing, an adjudication hearing and a disposition hearing on the juvenile case. The failure to meet the mandatory deadlines for setting these matters falls squarely on the State. In none of the records provided does the State assert any good cause basis for delay in prosecuting the juvenile case. Defendant confessed in a written statement and all evidence was available and straightforward. Nothing barred the State from giving notice of its intent to request transfer of the case to district court when Defendant and the State appeared in court on November 12, 1996.
In light of the errors patent in the juvenile record, together with the failure of the State to timely seek hearings, we conclude that the case should not have been transferred to district court and the district court did not have jurisdiction to proceed.
Failure to timely try Defendant under La.C.Cr.P. art. 578
La.C.Cr.P. art. 578 provides:
Except as otherwise provided in this Chapter, no trial shall be commenced:
(1) In capital cases after three years from the date of institution of the prosecution;
(2) In other felony cases after two years from the date of institution of the prosecution; and
(3) In misdemeanor cases after one year from the date of institution of the prosecution.
The offense charged shall determine the applicable limitation.
While described in detail earlier in this opinion, the events and dates significant to this discussion bear repeating here. Defendant was originally arrested in November 1996. She first appeared in court in the juvenile court appearance hearing on the charge of principal to second degree *376 murder on November 12, 1996. The date the juvenile petition was filed is uncertain; but, as previously discussed, the latest possible date is November 20, 1997. On January 29, 1999, the juvenile court signed an order transferring the case to district court. On May 10, 1999, the grand jury indicted Defendant on charges of being a principal to first degree murder. Defendant was not tried until January 22, 2002. On that date, and just before trial, the State amended the charge to being a principal to second degree murder.
La.C.Cr.P. art. 382(B)(3) provides, "Criminal prosecutions in a juvenile court or family court shall be instituted by affidavit, information or indictment." As previously mentioned, the State's "original" delinquency petition is missing from the record. From the transcript of the November 12, 1996 hearing, it appears that the State's original charge against Defendant in juvenile court was principal to second degree murder. On either November 20, 1996, or November 20, 1997, the State filed the undated petition alleging Defendant to be delinquent for committing the crime of principal to first degree murder, which does appear in the record, in Ward Two Juvenile Court, Springhill City Court. Shortly thereafter, the State filed a motion to transfer the case to district court to try Defendant as an adult. There was no activity in the case until May 10, 1999, when the grand jury handed down indictments for principal to first degree murder and accessory after the fact to first degree murder. After Defendant pled not guilty to the charges, there was no activity in the case for another year and a half.
The first question presented is when the prosecution of Defendant was instituted for purposes of computing the three-year time limitation contained in article 578. La.C.Cr.P. art. 382(B)(3) provides that a juvenile proceeding "shall be instituted by affidavit, information or indictment."
La. Ch.C. art. 813(A)(1) provides:
A. The court may issue an order directing that a child be taken into custody upon presentation to the court of a written statement of facts sworn to before an officer authorized by law to administer oaths, by a peace officer, probation officer, district attorney, or other person designated by the court alleging facts showing that there is probable cause to believe either that:
(1) The child has committed a delinquent act.
The juvenile court record shows that, on November 8, 1996, the juvenile judge of the Ward Two Juvenile Court signed an order authorizing Defendant to be held in the Northwest Louisiana Juvenile Detention Center until further orders of the court. Preceding that order are statements from the arresting officers regarding Defendant's involvement in the offense. Arguably, therefore, prosecution was instituted on November 8, 1996. This is further supported by the fact that, on November 12, 1996, Defendant appeared and stipulated that there was sufficient probable cause to continue her in custody in juvenile detention.
At the latest, prosecution was instituted when the State's petition alleging Defendant to have been a principal in a first degree murder was filed. Again, this petition was undated, but it appears that it was either filed on November 20, 1996 or 1997. The motion to quash was filed January 22, 2001, three years and two months after the latest possible filing date of the juvenile petition. The record does not contain any evidence of any action to delay or extend the running of the three-year limitation period. The fact that the State subsequently obtained an indictment in the district court does not change the fact that the prosecution on that charge was originally *377 initiated in juvenile court. The Children's Code clearly bars untimely amendments to charges and requires dismissal in the event of untimely prosecution. To allow the State to subsequently charge Defendant with the new offense would be to allow the State additional time within which to bring Defendant to trial because of its failure to comply with the Children's Code.
The State argued in the juvenile court and the district court that the original institution of prosecution was for a lesser accessory after the fact charge and did not bar subsequent amendment to the more serious charge of being a principal to first degree murder. The State also appears to argue that it is not time-barred in the institution of a first degree murder charge, citing La.C.Cr.P. art. 571. This argument overlooks the fact that the only petition contained in the record from the juvenile proceedings charges Defendant with principal to first degree murder, which event we conclude instituted the prosecution of Defendant on this charge. We find, therefore, that the trial court erred in denying Defendant's motion to quash as to the charge of principal to first degree murder.[8] Defendant's conviction and sentence must be vacated.[9]

DECREE
For the foregoing reasons, Defendant's, Lynetta G. Erven, conviction and sentence are hereby vacated and set aside.
CONVICTION AND SENTENCE VACATED AND SET ASIDE.

APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, CARAWAY, PEATROSS, and HARRISON, JJ.
Rehearing denied.
NOTES
[1] Defendant's date of birth is December 16, 1981.
[2] We note that La. Ch.C. art. 843 provides as follows:

A. If a child is continued in custody prior to adjudication, the delinquency petition shall be filed within forty-eight hours of the hearing to determine continued custody.
B. If no petition is filed within the applicable time period, the child shall be released.
Even if the petition was filed on November 20, 1996, it was untimely as it was more than 48 hours after Defendant was continued in custody. Clearly, if the petition was filed on November 20, 1997, it was untimely.
[3] The transcript of that hearing shows that the juvenile court initially questioned the State's right to orally amend a delinquency petition, but considered the issue moot since the State was filing a motion to transfer the case to district court.
[4] There is no evidence in the record of an earlier indictment. The record also contains no evidence of why it took so long to indict Defendant.
[5] At the hearing on the motion to quash, Defendant's counsel represented to the trial court that he and the assistant district attorney had stipulated that any continuances would have no effect upon any prescription of this matter up until that time, if the case had prescribed. Defense counsel further asserted that these stipulations had not been put into the record. The transcript of the hearing shows that the State did not object to, or deny Defendant's assertion that there were such stipulations regarding the continuances. Also, the State, in brief before this court, has not argued that the continuances constituted any form of interruption of the time limitation periods of La.C.Cr.P. art. 578.
[6] La. Const. article 5, Sec. 19, provides:

The determination of guilt or innocence, the detention, and the custody of a person who is alleged to have committed a crime prior to his seventeenth birthday shall be pursuant to special juvenile procedures which shall be provided by law. However, the legislature may (1) by a two-thirds vote of the elected members of each house provide that special juvenile procedures shall not apply to juveniles arrested for having committed first or second degree murder, manslaughter, aggravated rape, armed robbery, aggravated burglary, aggravated kidnapping, attempted first degree murder, attempted second degree murder, forcible rape, simple rape, second degree kidnapping, a second or subsequent aggravated battery, a second or subsequent aggravated burglary, a second or subsequent offense of burglary of an inhabited dwelling, or a second or subsequent felony-grade violation of Part X or X-B of Chapter 4 of Title 40 of the Louisiana Revised Statutes of 1950, involving the manufacture, distribution, or possession with intent to distribute controlled dangerous substances, and (2) by two-thirds vote of the elected members of each house lower the maximum ages of persons to whom juvenile procedures shall apply, and (3) by two-thirds vote of the elected members of each house establish a procedure by which the court of original jurisdiction may waive special juvenile procedures in order that adult procedures shall apply in individual cases. The legislature, by a majority of the elected members of each house, shall make special provisions for detention and custody of juveniles who are subject to the jurisdiction of the district court pending determination of guilt or innocence.
[7] The error patent recognized by this court in State ex rel. K.G., supra, was found to be harmless because the defendant was represented by counsel at the appearance hearing and pled not guilty. In the case sub judice, however, we emphasize that, while Defendant was represented by appointed counsel, there was no appearance hearing conducted.
[8] A motion to quash is the proper motion to challenge an untimely commencement of trial. La.C.Cr.P. arts. 532(7) and 581; State v. Oliver, 34,292 (La.App.2d Cir.5/9/01), 786 So.2d 317; State v. Pratt, 32,302 (La.App.2d Cir.9/22/99), 748 So.2d 25; State v. Caston, 26,415 (La.App.2d Cir.10/26/94), 645 So.2d 1202, writ denied, 94-3137 (La.5/5/95), 654 So.2d 337. If the trial is not timely commenced, the court shall uphold the defendant's motion to quash and dismiss the indictment. State v. Harris, 29,574 (La.App.2d Cir.5/7/97), 694 So.2d 626.
[9] See La.C.Cr.P. art. 581, which provides as follows:

Upon the expiration of the limitations established by this Chapter, the court shall, upon motion of the defendant, dismiss the indictment. This right of dismissal is waived unless the motion to quash is made prior to trial. If the indictment is dismissed under this article, there shall be no further prosecution against the defendant for the same or a lesser offense based on the same facts.